41 P.3d 1230 (2002)
Darlene A. CLARK, Appellant,
v.
SEARS ROEBUCK & CO., a New York corporation, Respondent, and
Tony Watkins, Defendant.
No. 47674-2-I.
Court of Appeals of Washington, Division 1.
March 11, 2002.
Kelly Susan Reese, M. Katheryn Bradley, Wayne W. Hansen, Seattle, for Respondent.
Melton L. Crawford, MacDonald, Hoague & Bayless, Seattle, for Appellant.
APPELWICK, J.
After Sears Roebuck & Company terminated Darlene Clark's at will employment, she sued for wrongful termination. Because the specific written policy in Sears' managers' handbook upon which Clark purported to rely does not amount to a promise of specific treatment (i.e., discipline before termination) in her specific situation, her employment remained terminable at will. We therefore affirm the trial court's dismissal of her claim.

FACTS
In 1976, Sears Roebuck & Company hired Darlene Clark as an employee. Clark signed a document containing the following language, making clear that her employment was terminable at will:
[M]y employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the *1231 option of either the Company or myself. I understand that no unit manager or representative of Sears, Roebuck and Co., other than the president or vice-president of the Company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.
Over the next 21 years, Clark worked for Sears in various capacities and received positive performance evaluations. She planned to work at Sears until she retired.
Clark's sense of job security was premised upon Sears' consistent responses to employee errors with corrective procedures.
She claims she was aware of a progressive deficiency process personnel policy. She, however, admits that she never saw any such written policy in writing. Under that process as she understood it, Sears management would speak to the employee about the deficiency and write a memorandum outlining actions required to correct the deficiency before terminating that employee. Clark acknowledges, however, that she was aware that Sears terminated numerous employeesincluding some in her own unitwithout following the progressive deficiency process.
Clark is correct that a progressive deficiency process personnel policy existed in the "Sears Human Resource Guide For Managers" (the managers' manual), which is a "quick reference guide" "for the sole use of supervisors and management." Relevant portions of that policy are set forth in Chapters 6 and 7 of that manual. The first page of Chapter 6 states:

TERMINATION AND RETIREMENT OVERVIEW
Policy
Employment at Sears is for an indefinite period and terminable at the will of either Sears or an associate with or without notice and with or without cause at any time.
References in this Guide to reasons for termination are illustrative only and are not intended to limit in any way either the reasons for which an associate may be terminated or Sears authority to terminate at will.
Sears reserves the right to depart from its standard disciplinary procedures when, in its discretion, such a departure is deemed warranted.
The following pertinent language also appears in Chapter 6:
RELEASE OF ASSOCIATES
Unsatisfactory work, conduct or attitude
If associates' work, conduct, or attitude is unsatisfactory, management must make a sincere effort to help associates correct their faults and only release associates when such efforts are unsuccessful.
....
Dishonesty and willful misconduct
Certain situations warrant a departure from the corrective review process. Following are examples of acts that could result in immediate termination. The list is not all inclusive. [Followed by 16 examples.]
....
Chapter 7 of the managers' manual states:

ASSOCIATE RELATIONS
CORRECTION OF ASSOCIATE DEFICIENCIES
Policy
It is Sears policy to handle deficiency problems in such a way that associates have:
 their deficiencies clearly explained and documented
 fair opportunity and encouragement to correct them and
 adequate training and retraining, if necessary
This is accomplished through the use of deficiency interviews.
Usage
Deficiency interviews are appropriate when deficiencies are serious enough that they will cause termination if they are not corrected within a reasonable time.
In 1997, Sears held a month-long sales contest between the districts. After Clark's *1232 district won the contest, Sears discovered that sales were held back in that district during the contest. Doing so meant that sales made before the contest were rung up as if they were made during the contest.
On December 11, 1997, Sears terminated Clark's employment without using the progressive deficiency process. The reasons Sears provided were "willful misconduct, falsification of company records, improper recording of sales detail and violation of company ethics policy" for holding sales and instructing others to hold sales.
Clark filed a complaint against Sears for wrongful termination. Specifically, she claimed that she relied on Sears' progressive deficiency process personnel policy and that Sears breached that policy by terminating her without following that policy.[1] After a bench trial, the trial court dismissed Clark's claim. She appeals.

ANALYSIS
"Employment relationships in Washington generally are terminable at will by either party." McClintick v. Timber Products M'frs, Inc., 105 Wash.App. 914, 920, 21 P.3d 328 (2001). If, however, employment at will status is modified, a terminated employee may sue for the tort of wrongful discharge. DePhillips v. Zolt Const. Co., Inc., 136 Wash.2d 26, 34-37, 959 P.2d 1104 (1998).
At the onset of her employment, Clark signed a document expressly acknowledging that she was an at will employee. She also acknowledged that only the president or vice president of Sears was authorized to make a change in her status as an at will employee. Despite this, Clark insists that Sears modified her employment status by promising to use progressive discipline before terminating an employee.
The general atmosphere of the workplace cannot give rise to a promise that modifies at will employment. Bulman v. Safeway, Inc., 144 Wash.2d 335, 340-44, 343, 27 P.3d 1172 (2001). Employment at will may, however, be modified if an employee justifiably relies on a specific written policy in the employer's handbook. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 228-31, 685 P.2d 1081 (1984). As a threshold matter for such a claim, the employee must prove by a preponderance of the evidence that there is a specific written policy in the employer's handbook that amounted to a promise of specific treatment in specific situations. Bulman, 144 Wash.2d at 340, 27 P.3d 1172.[2]
In an attempt to satisfy this requirement, Clark points to select portions of a written policy contained in Chapters 6 and 7 of the managers' manual that she alleges contain Sears' promise to use progressive discipline before termination. Clark admits that she never reviewed the complete policy in the managers' manual.[3] She also admits that she knew Sears terminated employees without using progressive discipline.
Clark relies upon the following language in Chapter 6:
Unsatisfactory work, conduct or attitude
If associates' work, conduct, or attitude is unsatisfactory, management must make a sincere effort to help associates correct their faults and only release associates when such efforts are unsuccessful.
But to determine if Sears made a promise of specific treatment in specific situations, it is necessary to evaluate the full policy as it appears in Chapter 6.[4]See, e.g., Doolittle v. Small Tribes of Western Wash., Inc., 94 Wash.App. 126, 131, 971 P.2d 545 (1999).
*1233 Just two pages before the above language is the following language that Clark must rely upon:
Employment at Sears is for an indefinite period and ... Sears reserves the right to depart from its standard disciplinary procedures when, in its discretion, such a departure is deemed warranted.
That language was preceded by the following clear statement:
References in this Guide to reasons for termination are illustrative only and are not intended to limit in any way either the reasons for which an associate may be terminated or Sears authority to terminate at will.
And before that sentence is the following direct statement:
Employment at Sears is for an indefinite period and terminable at the will of either Sears or an associate with or without notice and with or without cause at any time.
Clark presented no evidence that Sears intended "to surrender its power to determine whether an employee's misconduct warranted his or her termination" when it set forth guidelines in a managers' manual. Bulman, 144 Wash.2d at 353, 27 P.3d 1172. Absent such evidence, the guidelines apply only if the person remains employed. Progressive discipline is not available to former employees. The progressive discipline process would begin, if at all, only after Sears made an initial decision not to terminate an employee for the conduct at issue. In this case, Sears decided to terminate Clark immediately after learning that sales receipts were held back in her district.
Employment at Sears was at will. Sears had terminated other employees without progressive discipline. For those whom Sears chose not to terminate, progressive discipline was the standard procedure but not the mandatory or exclusive remedy. Sears retained discretion to depart from the standard procedure. The trial court correctly concluded as a matter of law that no promise was made of specific treatment in specific situations. Without a promise that modified Clark's employment at will status, none of her theories can succeed. No further analysis is required.
Accordingly, we affirm the trial court's dismissal of Clark's claim, and deny her request for attorney fees and costs on appeal.
GROSSE and ELLINGTON, JJ., concur.
NOTES
[1] Clark also alleged other claims that are not at issue in this appeal.
[2] In order to prevail on such a claim, an employee must also prove by a preponderance of the evidence that he or she justifiably relied upon that promise and that the employer breached that promise. Bulman, 144 Wash.2d at 340-44, 27 P.3d 1172.
[3] Although Clark's failure to read the manual is not dispositive, she is required to be sufficiently aware of the policy in order to demonstrate she justifiably relied on it. Bulman, 144 Wash.2d at 349 n. 7, 27 P.3d 1172.
[4] Although Clark's lack of awareness of portions of the policy may be relevant to the justifiable reliance element of her claim, it has no bearing on the threshold issue of whether there exists a specific written policy in the employer's handbook that amounted to a promise of specific treatment in specific situations. See Bulman, 144 Wash.2d at 343-44, 27 P.3d 1172.