75 P.3d 533 (2003)
116 Wash.App. 718
Larry CARLSON, Respondent and Cross-Appellant,
v.
LAKE CHELAN COMMUNITY HOSPITAL, a public district hospital, Appellant.
No. 20260-7-III.
Court of Appeals of Washington, Division 3, Panel Eight.
February 20, 2003.
Publication Ordered April 22, 2003.
*536 Stanley A. Bastian, Jeffers, Danielson, Sonn, Wenatchee, for Appellants.
Scott M. Kane, Attorney at Law, East Wenatchee, for Respondents. *534
*535 KURTZ, J.
Lake Chelan Community Hospital (LCCH) appeals the judgment awarding Larry Carlson damages for wrongful termination of his employment at the hospital. LCCH contends the trial court erred: (1) by granting judgment as a matter of law, ruling that LCCH's Personnel Handbook created contractual obligations enforceable against LCCH; (2) by granting Mr. Carlson's motion in limine, preventing LCCH from submitting evidence of Mr. Carlson's prior work problems; and (3) when calculating Mr. Carlson's attorney fee award. Mr. Carlson cross-appeals. He contends the trial court erred by dismissing his general damages claims against LCCH. Mr. Carlson also requests an *537 award of attorney fees on appeal. We affirm the judgment and award Mr. Carlson his attorney fees on appeal.

FACTS
Larry Carlson began his employment at LCCH in August 1987 as Support Services Manager. He worked in this capacity until early 1995 when he was demoted to a general maintenance position. In November 1996, Mr. Carlson was terminated by his supervisor Mark Tesch. Mr. Tesch had been an employee within the maintenance department, but was later promoted to the position of Support Services Manager and became Mr. Carlson's supervisor.
On Wednesday, November 20, 1996, Mr. Tesch requested a meeting with Mr. Carlson to discuss two work issues: (1) Mr. Carlson's decision to leave work to run a personal errand, and (2) Mr. Carlson's decision to have a bottle of oxygen for his personal use delivered to LCCH and have LCCH advance payment for the oxygen. Mr. Tesch testified that he asked Mr. Carlson to come to his office and Mr. Carlson grabbed a tape recorder. Mr. Carlson recalls that he told Mr. Tesch that he wanted a third party present. Mr. Tesch did not recall whether Mr. Carlson asked for the presence of a third party. However, Mr. Tesch testified that he refused Mr. Carlson's request to use a tape recorder and that Mr. Carlson then refused to meet with Mr. Tesch and walked out of the meeting. Mr. Carlson testified that he did not go into Mr. Tesch's office that day.
The following Friday, Mr. Tesch attempted to meet with Mr. Carlsonalong with a third person, Susan Towne, the Administrative Director of Facilities Management. Once again, Mr. Carlson wanted to tape record the meeting, and Mr. Tesch refused. Mr. Carlson then refused to attend the meeting. When Mr. Carlson refused to meet with Mr. Tesch and Ms. Towne, Mr. Tesch informed Mr. Carlson that he was suspended. Mr. Tesch sent Mr. Carlson a letter dated November 25, 1996, confirming the suspension for insubordination and informing him that termination of his employment would be recommended. Copies of the pages from the LCCH Personnel Handbook dealing with progressive discipline and termination were sent with this letter.
Pursuant to LCCH procedures outlined in the Personnel Handbook under "Progressive Discipline," LCCH Administrator, Moe Chaudry, appointed Terry Adams, Employee Assistance Program Coordinator, to investigate the incident. Ex. 6. Mr. Adams wrote an initial memorandum to Mr. Chaudry finding that the disciplinary measure was within the established policies. Mr. Tesch terminated Mr. Carlson by letter dated November 27, 1996. Meanwhile, Mr. Adams spoke with other employees who confirmed that Mr. Carlson had requested that the meeting be tape recorded or that he be allowed to have a third party present.
LCCH Personnel Handbook. LCCH had a Personnel Handbook in effect at the time of Mr. Carlson's termination. Section III of the Handbook dealt with discipline and discharge. These pages were mailed to Mr. Carlson with the termination letter from Mr. Tesch. The Handbook states that insubordination toward a reasonable supervisory or management directive is a gross infraction that can lead to a recommendation for termination. Under such circumstances, the LCCH reviews the information or appoints an independent investigator to determine if the action taken is within established policies. The administrator then either approves or disapproves termination or takes some other disciplinary action. The action of the administrator is deemed final. The disciplinary policy is prefaced with language indicating that the policy exists to assure disciplinary measures are fair and consistent, with the expectancy that department managers and supervisors are to be fair and consistent.
In addition to the Handbook, LCCH also enacted the Heroic Environment Program. As the coordinator of the Employee Assistance Program, Mr. Adams was responsible for part of the Heroic Environment Program.
Complaint. Mr. Carlson brought suit against LCCH claiming LCCH breached the employment contract. Mr. Carlson filed an amended complaint adding the claim of age discrimination. The trial court later permitted Mr. Carlson to file a second amended *538 complaint allowing him to add claims of breach of promise of specific treatment and disability discrimination.
Discovery. In depositions, LCCH management testified that there was tension between Mr. Carlson and Mr. Tesch. Mr. Chaudry, Administrator at LCCH, testified that he was aware of this tension and of ongoing problems with Mr. Carlson's performance and interaction with other employees. Mr. Chaudry testified that Mr. Carlson had difficulty accepting Mr. Tesch as a supervisor. Ms. Towne also testified that Mr. Tesch had difficulties supervising Mr. Carlson.
Mr. Tesch had made notes of difficulties he experienced supervising Mr. Carlson. These notes were not part of the personnel file. These notes were disclosed at some point in the discovery process. LCCH contends the information was provided in June 1998 when LCCH answered Mr. Carlson's discovery requests. This was 33 months before trial. In its Evidence Rule 904 Notice served 30 days prior to trial, LCCH provided Mr. Carlson with notice of its intent to offer these documents at trial.
As part of the discovery process, Mr. Carlson sent various Interrogatories and Requests for Production of documents. Some of these requests were aimed specifically at uncovering the reasons for Mr. Carlson's termination. In Interrogatory No. 73, Mr. Carlson requested that LCCH: "State each and every reason for plaintiff's termination." Clerk's Papers (CP) at 52. LCCH responded: "Insubordination toward a reasonable supervisory directive." CP at 323. Interrogatory No. 78 requested that LCCH list any reason why Mr. Carlson was not educated or retrained to place him in another position. LCCH responded: "`Plaintiff was terminated for gross insubordination.'" CP at 30. In Interrogatory No. 26, Mr. Carlson requested identification of documents related to his termination; Request for Production No. 14 asked for the production of these documents. In response to these requests, LCCH referred only to Mr. Carlson's personnel file.
In his second set of discovery requests, Mr. Carlson asked additional questions aimed at revealing all of the reasons for his termination. Interrogatory No. 13 asked whether one of the reasons Mr. Carlson was terminated was for unsatisfactory job performance; LCCH was to state the nature of any unsatisfactory job performance and identify the persons with knowledge of this. LCCH responded that the only unsatisfactory performance was "Gross infractioninsubordination toward a reasonable supervisory request."[1] The implication of this response was that there was a single incident. Mr. Tesch, Mr. Chaudry, and Mr. Adams were identified as witnesses with relevant knowledge. In response to Request for Production No. 3 of Plaintiff's Second Discovery Requests, LCCH indicated that all materials had been produced.
Trial. Mr. Carlson brought a pretrial motion in limine seeking to prohibit LCCH from admitting any evidence of "[e]mployment issues unrelated to termination." CP at 727. The court denied this motion.
When presenting his case, Mr. Carlson argued that LCCH should have utilized progressive discipline prior to termination. On the third day of trial, Mr. Carlson renewed his motion in limine requesting that LCCH not be allowed to enter evidence of Mr. Carlson's prior work problems. For the first time, Mr. Carlson's motion was based on LCCH's answers to Mr. Carlson's discovery requests. In opposition to this motion, LCCH argued that while insubordination was the basis for Mr. Carlson's termination, the jury needed to consider evidence supporting the level of discipline chosen by LCCH. Mr. Carlson agreed that he would not argue lesser discipline should have been imposed. The court then granted Mr. Carlson's motion in limine.
Hence, both parties were not allowed to make arguments or enter testimony related to progressive discipline. As a result, the litigation centered on whether Mr. Carlson's conduct constituted "[i]nsubordination toward a reasonable supervisory directive." CP at 323.
*539 At trial, employees, management, and Mr. Carlson testified as to their knowledge of the Personnel Handbook. Mr. Tesch testified that management was expected to follow the policies and procedures in the Handbook and that employees had a right to depend on the policies and procedures. Mr. Chaudry, Hospital Administrator, testified that the Handbook was intended to govern the conduct of hospital management and intended to be relied upon by employees. Mr. Carlson testified that he received a copy of the Handbook, was aware of its contents, and relied on it. During the time he served as a manager, he believed that he was expected to comply with the terms and conditions of the Handbook. As an employee, he counted on the documentation to form his performance.
Equally important, Mr. Adams testified that based on his understanding of the Handbook, the Heroic Environment Program, and the Employee Assistance Program, it would not have been inappropriate for Mr. Carlson to request Mr. Adams's presence at a meeting with Mr. Carlson's supervisor. Mr. Chaudry also testified that it was not insubordination for Mr. Carlson to request to have Mr. Adams present at a potential disciplinary meeting with Mr. Tesch. Mr. Chaudry agreed that Mr. Carlson had a right to do this under the Employee Assistance Program, the personnel policies, and the Heroic Environment Program.
After the close of evidence, the trial court granted LCCH judgment as a matter of law dismissing Mr. Carlson's disability discrimination claim. Mr. Carlson asked the court to enter judgment as a matter of law that the Personnel Handbook promised specific treatment in specific circumstances. LCCH argued that there were issues of fact related to the Mr. Carlson's understanding and reliance on the disclaimer that created questions of fact requiring that the issue be submitted to a jury. The court granted Mr. Carlson's motion, ruling the Personnel Handbook created obligations enforceable against LCCH. Ultimately, the jury awarded Mr. Carlson damages in the amount of $408,807.
Post-Trial Motions. Mr. Carlson brought a motion for an award of attorney fees pursuant to RCW 49.48.030. He requested that the court utilize a double multiplier when calculating the award. LCCH asked that a multiplier not be used and that the court discount hours spent by Mr. Carlson on unsuccessful claims. The court discounted the hours spent by Mr. Carlson in relation to Mr. Carlson's pretrial motion for judgment as a matter of law. The court then applied a 1.5 multiplier and awarded attorney fees to Mr. Carlson in the amount of $48,038.25.
LCCH appeals, contending the trial court erred: (1) by granting judgment as a matter of law, ruling that LCCH's Personnel Handbook created contractual obligations enforceable against LCCH; (2) by granting Mr. Carlson's motion in limine, preventing LCCH from submitting evidence of Mr. Carlson's prior work problems; and (3) when calculating Mr. Carlson's attorney fee award. Mr. Carlson cross-appeals. He contends the trial court erred by dismissing his general damages claims against LCCH. Mr. Carlson also requests an award of attorney fees on appeal.

ANALYSIS
Personnel Handbook. Under CR 50(a)(1), a motion for judgment as a matter of law may be brought after a party has been fully heard with respect to an issue and there is no legally sufficient basis for a reasonable jury to find in favor of the resisting party with respect to that issue. This court applies the same standard when reviewing a trial court's decision on a motion for a judgment as a matter of law. Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997). A motion for judgment as a matter of law is properly granted when, viewing the evidence in the light most favorable to the nonmoving party, the court can say there is no substantial evidence or reasonable inference to support a verdict for the nonmoving party. Id.
The general rule is that employment of indefinite duration may be terminated by either the employer or the employee at any time, without cause. Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 223, 685 P.2d 1081 (1984). However, the terminable-at-will relationship can be contractually modified through an employee policy manual provided by an employer to employees. Id. at *540 229-30, 685 P.2d 1081. An employee seeking to enforce promises that an employer made in an employee handbook must prove that: (1) the statements in the policy manual amounted to promises of specific treatment in specific situations; (2) the plaintiff justifiably relied upon any such promise; and (3) the promise of specific treatment was breached. Id. at 233, 685 P.2d 1081. However, an employer can disclaim any intent to make the provisions of an employee handbook part of the employment relationship by a conspicuous disclaimer stating that nothing in the handbook is part of the employment relationship, but instead is a general statement of company policy. Payne v. Sunnyside Cmty. Hosp., 78 Wash.App. 34, 39, 894 P.2d 1379 (1995). The effect of a disclaimer may present a question of law or a question of fact. Id.
Effect of Disclaimer. LCCH first contends the trial court erred by ruling that the Personnel Handbook created enforceable obligations against LCCH because the trial court failed to consider the effect of the disclaimer contained in the Handbook. Additionally, LCCH contends the issue as to the effect of the disclaimer raises a question of fact that should have been decided by a jury.
The first page of the Personnel Handbook states:
This Handbook is intended as a set of general guidelines and should not be construed as a contract or covenant of your employment. Management reserves the right, at any time, to revise this Handbook, wholly or in part.
CP at 332. Relying on Payne and Clark v. Sears Roebuck & Co., 110 Wash.App. 825, 41 P.3d 1230 (2002), LCCH contends this disclaimer prevents the Handbook from altering the at-will employment relationship.
In Payne, the trial court had granted summary judgment in favor of the hospital based on a disclaimer in the employee manual. The Payne court reversed, determining that the mandatory language in the manual, when viewed in light of the evidence, raised a question of fact as to whether the hospital intended to modify the employment relationship. Payne, 78 Wash.App. at 43, 894 P.2d 1379. Significantly, the language of the disclaimer in Payne was much stronger than the language here. Payne involved a disclaimer that read as follows:
"The policies and procedures described [here] are implemented at the sole discretion of the hospital and are subject to change at any time without prior notice....
....
This [document] is designed to outline general hospital policies and procedures. Nothing contained [here] is to be considered as an employment contract. Employees have the right to resign the employment at any time, without notice, for any reason or no reason. The hospital retains a similar right to discontinuation of the employment of any employee."
Id. at 37, 894 P.2d 1379.
In Clark, the trial court had dismissed Ms. Clark's claim of wrongful termination after a bench trial. The trial court determined, as a matter of law, that no promise was made of specific treatment in specific situations. Clark, 110 Wash.App. at 832, 41 P.3d 1230. Affirming this decision, Division One found that Ms. Clark had presented no evidence that Sears intended to modify its power to terminate an employee for misconduct by adopting a manual establishing guidelines for progressive discipline. Id. at 830-31, 41 P.3d 1230. Interestingly, as in Payne, the language in Clark is much stronger than the language at issue here. The language was as follows:
Employment at Sears is for an indefinite period and ... Sears reserves the right to depart from its standard disciplinary procedures when, in its discretion, such a departure is deemed warranted.
That language was preceded by the following clear statement:
References in this Guide to reasons for termination are illustrative only and are not intended to limit in any way either the reasons for which an associate may be terminated or Sears authority to terminate at will.
And before that sentence is the following direct statement:

*541 Employment at Sears is for an indefinite period and terminable at the will of either Sears or an associate with or without notice and with or without cause at any time.
Clark, 110 Wash.App. at 831, 41 P.3d 1230.
Here, the disclaimer language, taken alone, does not constitute a clear, conspicuous statement when compared with the language in Clark and Payne. While the first sentence suggests that LCCH did not intend to be bound by the procedures in the Handbook, the second sentence suggests that the employer is accepting some limitation on its authority in that management agrees that it can change the Handbook at any time, not that management retains the authority to act apart from the procedures in the Handbook.
LCCH next argues that the effect of the disclaimer was a question that should have been left for the jury. LCCH points out that the effect of a disclaimer may present a question of law or a question of fact. See Payne, 78 Wash.App. at 39, 894 P.2d 1379. Here, the trial court found that all of the testimony regarding the language of the disclaimer indicated that the disclaimer was to be disregarded.
As Payne instructs, the language in the Handbook can be viewed in light of other evidence indicating that LCCH intended to modify the employment relationship. See Payne, 78 Wash.App. at 43, 894 P.2d 1379. LCCH maintains the disclaimer language is consistent with Mr. Carlson's testimony that he viewed the provisions in the Handbook as "guidelines." Report of Proceedings (RP) at 352. This argument is unpersuasive for two reasons.
First, LCCH places too much emphasis on Mr. Carlson's use of the term "guidelines" and, in doing so, mischaracterizes Mr. Carlson's testimony. Mr. Carlson was asked whether, while he was a manager, anyone told him that the Personnel Handbook had any kind of disclaimer. Mr. Carlson responded: "I was told it was guidelines." RP at 352. Mr. Carlson was then asked if he was told that the Handbook could not be followed or whether a particular portion of the Handbook did not need to be followed. Mr. Carlson responded that he did not recall anything to that effect. Mr. Carlson also testified that as a manager, he used the Handbook "as a guideline when dealing with anything that needed to be dealt with. If there was something that needed to be addressed, I would refer to the policy and procedure manual or the personnel manual and try to figure out how I could implement that philosophy." RP at 351. When asked, Mr. Carlson agreed that, as a manager, he "[was] expected to comply with the terms and conditions of the personnel handbook." RP at 351. He further testified that, as an employee, he "counted on the documentation to form my performance." RP at 351.
Second, Mr. Carlson's testimony must be considered in light of the other evidence introduced at trial. The evidence at trial established that LCCH management also viewed Handbook procedures as enforceable obligations applicable to Mr. Carlson's employment relationship with LCCH. Significantly, pages from the Handbook setting forth disciplinary procedures were sent to Mr. Carlson with his letter of termination. Mr. Chaudry, Hospital Administrator, testified that the Handbook was intended to govern the conduct of hospital management and was intended to be relied upon by employees. Mr. Chaudry also testified that it was not insubordination for Mr. Carlson to request Mr. Adams's presence at a potential disciplinary meeting with Mr. Tesch. Mr. Chaudry agreed that Mr. Carlson had a right to do this under the Employee Assistance Program, the personnel policies, and the Heroic Environment Program. Additionally, Mr. Adams testified that based on his understanding of the Handbook, the Heroic Environment Program, and the Employee Assistance Program, it would not have been inappropriate for Mr. Carlson to request Mr. Adams's presence at a meeting with Mr. Carlson's supervisor.
In short, despite Mr. Carlson's use of the word "guidelines," the evidence establishes that both parties proceeded under the assumption that the Handbook set forth enforceable procedures that were applicable to Mr. Carlson's employment relationship with LCCH.
*542 A motion for judgment as a matter of law is properly granted when, viewing the evidence in the light most favorable to the nonmoving party, the court can say there is no substantial evidence or reasonable inference to support a verdict for the nonmoving party. Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997). Based on the record here, the court did not err by ruling as a matter of law that the LCCH Personnel Handbook created obligations enforceable against LCCH.
Written Promise. Relying on Clark, LCCH argues that the employee must prove that the employer made a written promise of specific treatment in a specific situation. According to LCCH, Mr. Carlson's claim of breach of promise of specific performance is based on an alleged promise by LCCH that employees had the right to have a third party present during any investigative or disciplinary meeting with a supervisor. LCCH points out that this promise is not contained in the Personnel Handbook, but, rather, was part of the Heroic Environment Program and Employee Assistance Program.
To some extent, LCCH is confusing the evidence needed to establish that the Handbook created contractual obligations with the evidence submitted to establish a breach of LCCH's promise of specific treatment. In its Handbook, LCCH had established procedures for the discipline and discharge of employees. Employees found to have committed a first incident of a gross infraction could be suspended up to five working days without pay, and/or recommended for termination. Mr. Carlson maintains that the Handbook and this procedure constitute LCCH's promise of specific treatment. In the Handbook, insubordination toward a reasonable supervisory or management directive is a gross infraction. But what constitutes a reasonable supervisory or management directive is a question of fact and Mr. Carlson can refer to the Employee Assistance Program and the Heroic Environment Program when he attempts to show that his conduct did not constitute insubordination. It follows then that the promise Mr. Carlson seeks to enforce here is the written promise contained in the Handbook.
Evidence as to Justifiable Reliance. LCCH next contends that there is insufficient evidence for the trial court to conclude that Mr. Carlson relied upon the provisions in the Handbook or that the provisions in the Handbook induced him to remain on the job.
This issue is complicated by the court's decision in Bulman v. Safeway, Inc., 144 Wash.2d 335, 27 P.3d 1172 (2001). At the time of trial, the Supreme Court had granted review of Division One's decision in Bulman v. Safeway, Inc., 96 Wash.App. 194, 978 P.2d 568 (1999), rev'd, 144 Wash.2d 335, 27 P.3d 1172. Division One had adopted the atmospheric test in analyzing the reliance element. Id. at 205, 978 P.2d 568. The Supreme Court determined that the atmospheric test was an overly broad interpretation of Thompson. Bulman, 144 Wash.2d at 342, 27 P.3d 1172. The court concluded that the jury verdict was unsupported by substantial evidence that Mr. Bulman justifiably relied upon the personnel polices in question. The court reasoned that the focus must be on whether the employer made a promise of specific treatment in specific circumstances that induced the employee to stay on the job and not seek other employment. Id. at 343-44, 27 P.3d 1172. In short, the court's concern "was whether a promise, not the atmosphere created by such promises, induced an employee to remain in a job." Id. at 344, 27 P.3d 1172. The court concluded there was insufficient evidence to support the jury verdict given that Mr. Bulman failed to demonstrate any pretermination familiarity with the promises of specific treatment in specific circumstances contained in the personnel policies. Id. at 350, 27 P.3d 1172.
LCCH first argues that there is no evidence that Mr. Carlson relied upon the provisions in the Personnel Handbook or that the provisions of the Personnel Handbook induced him to stay on the job.
Significantly, the pages of the Handbook that dealt with discipline and discharge were mailed to Mr. Carlson with the termination letter from Mr. Tesch. The Handbook states that insubordination toward a reasonable supervisory or management directive is a gross infraction that can lead to a recommendation *543 for termination. Under such circumstances, LCCH reviews the information or appoints an independent investigator to determine if the action taken is within established policies. The administrator then either approves or disapproves termination or takes some other disciplinary action. The action of the administrator is deemed final. The disciplinary policy is prefaced with language indicating that the policy exists to assure disciplinary measures are fair and consistent, with the expectancy that department managers and supervisors are to be fair and consistent.
Additionally, in contrast to Bulman, here employees, management, and Mr. Carlson testified as to their knowledge of the Personnel Handbook. Mr. Tesch, Mr. Carlson's supervisor, testified that management was expected to follow the policies and procedures in the Handbook and that employees had a right to depend on the policies and procedures. Mr. Chaudry, Hospital Administrator, testified that the Handbook was intended to govern the conduct of hospital management and intended to be relied upon by employees. Mr. Carlson testified that he received a copy of the Handbook, was aware of its contents, and relied on it. During the time he served as a manager, he believed that he was expected to comply with the terms and conditions of the Handbook. As an employee, he counted on the documentation to form his performance. In short, the evidence was overwhelming that Mr. Carlson was justified in relying on the specific promises in the Handbook.
LCCH also suggests that Mr. Carlson must also demonstrate or show some evidence indicating that the provisions of the Handbook induced him to stay on the job. This argument reads too much into Bulman. The standard is an either/or standard and Mr. Carlson has provided overwhelming evidence indicating that he relied on the provisions of the Handbook.
In short, based on the record here, the court did not err by ruling that the Personnel Handbook created enforceable obligations against LCCH. LCCH's arguments here may also raise a sufficiency of the evidence question regarding the jury's verdict. This argument also must fail. Sufficient evidence supports the jury's conclusion that Mr. Carlson's conduct did not constitute insubordination and that LCCH breached its promise of specific treatment.
Motion in Limine. The determination of the admissibility of evidence is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. Himango v. Prime Time Broad., Inc., 37 Wash.App. 259, 266, 680 P.2d 432 (1984). Significantly, a trial court has broad discretion as to the sanction to impose for the violation of a discovery order or discovery rules. Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997); Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 355, 858 P.2d 1054 (1993).
Discovery sanctions may be imposed under CR 26 or CR 37. CR 37 permits a court to impose sanctions when a party refuses to obey an order compelling discovery. Here, the trial court had not entered an order compelling discovery; hence, the sanctions here were entered under CR 26. If a violation of CR 26 is found, the imposition of sanctions is mandatory. CR 26(g).
Admittedly, the sanction imposed here was severe. The exclusion of testimony is an "extreme sanction." In re Estate of Foster, 55 Wash.App. 545, 548, 779 P.2d 272 (1989). It is an abuse of discretion to exclude testimony without a showing of (1) intentional nondisclosure, (2) willful violation of a court order, or (3) other unconscionable conduct. Id. However, even an inadvertent error in failing to disclose an expert has been deemed willful as a "`willful' violation means a violation without a reasonable excuse." Id. (citing Gammon v. Clark Equip. Co., 38 Wash.App. 274, 280, 686 P.2d 1102 (1984), aff'd, 104 Wash.2d 613, 707 P.2d 685 (1985)). When imposing a sanction, the court must consider the least severe sanction that will accomplish the purpose to be served by the imposition of the sanctionbut not be so minimal that it undermines the purpose of discovery. The purpose of the sanction is to deter, punish, compensate, educate, and ensure that the wrongdoer does not profit from the discovery violation. Fisons, 122 Wash.2d *544 at 355-56, 858 P.2d 1054. When choosing a sanction, the court may consider the wrongdoer's lack of intent to violate the rules and the other party's failure to mitigate. Id.
Was there a discovery violation? In its reply brief, LCCH argues that there was no discovery violation because its responses to Mr. Carlson's Interrogatories and Requests for Production were correct. This argument is without merit. In its responses, LCCH took the position that Mr. Carlson was terminated for insubordination. According to the Handbook, insubordination is a gross infraction that can lead to a recommendation of termination. If LCCH wanted to also argue that the decision to terminate was proper as progressive discipline, LCCH had to disclose the other incidents of misconduct that were part of this decision.
Relying upon cases such as Fisons and Anderson v. Mohundro,[2] LCCH suggests that the trial court had no authority to impose sanctions because there was no violation of a court order. LCCH is correct in arguing that there was no order compelling discovery. However, discovery sanctions based on the failure to comply with CR 26 do not require a showing that the party violated an order compelling discovery. Instead, the court must consider all surrounding circumstances and determine whether the attorney complied with CR 26. CR 26(g); Fisons, 122 Wash.2d at 343, 858 P.2d 1054. When applying the rules to the facts, the trial court must ask whether the attorney's certification to responses to Interrogatories and Requests for Production were made after reasonable inquiry and (1) were consistent with the rules, (2) were not interposed for any improper purpose, and (3) were not unreasonable or unduly burdensome or expensive. Fisons, 122 Wash.2d at 344, 858 P.2d 1054. In short, the responses must be "consistent with the letter, spirit and purpose of the rules." Id.
Here, the responses provided by LCCH were not complete and did not comply with "the letter, spirit and purpose of the rules." LCCH's reason for terminating Mr. Carlson was based on a progressive disciplinary plan that necessitated the consideration of Mr. Carlson's prior problems with LCCH's management. LCCH should have disclosed its reasoning when Mr. Carlson requested this information in his Interrogatories and Requests for Production. Also, LCCH should have updated its responses. CR 26(e). As a result, the court had the authority under CR 26 to impose sanctions regardless of the fact that LCCH had not violated an order to compel discovery. "A motion to compel compliance with the rules is not a prerequisite to a sanctions motion." Fisons, 122 Wash.2d at 345, 858 P.2d 1054.
LCCH next argues that the court erred by imposing discovery sanctions because there was no showing that LCCH's conduct was intentional. However, a showing of intent is not required before sanctions may be imposed. Id. A showing of intentional conduct is not required as even an inadvertent failure to disclose is enough if there is a violation of the rule without a reasonable excuse. See Foster, 55 Wash.App. at 548, 779 P.2d 272. Here, LCCH may not have intended to make incomplete discovery responses, but there was no reasonable excuse for LCCH's repeated failure to make complete responses to the requests for information regarding the reasons for Mr. Carlson's termination.
LCCH also contends that there was no discovery violation because the information requested had been disclosed as part of other inquiries. In making this argument, LCCH attempts to distinguish this case from Lampard v. Roth, 38 Wash.App. 198, 202, 684 P.2d 1353 (1984), where the court concluded that the trial court abused its discretion by not excluding the testimony of witnesses who were not disclosed prior to trial. But this argument is not particularly helpful. The court here had to determine whether LCCH's responses were "consistent with the letter, spirit and purpose of the rules." An inquiry into whether the information was ultimately disclosed is part of this process but is not determinative. Moreover, the issue of disclosure or nondisclosure was also a factor for the court to consider when fashioning a *545 sanction. As the trial court noted, the issue "wasn't with whether Mr. Kane had knowledge of the secret book ... but whether or not he had knowledge the defendant would be arguing other alleged performance problems." RP at 227-28.
Lastly, LCCH contends the court erred by imposing sanctions because Mr. Carlson failed to establish that he was prejudiced by LCCH's responses. However, the court must consider the impact of the problem when determining whether a violation took place and designing the sanction. Moreover, the prejudice here is obvious. Mr. Carlson was told that the reason for his termination was "[i]nsubordination toward a reasonable supervisory directive." CP at 323. Counsel for Mr. Carlson explained that, had he known prior to trial of LCCH's decision to rely on other grounds for the termination grounds not contained in the personnel recordshe would have followed up on these additional grounds for termination during the discovery process.
In short, LCCH seeks to establish a black and white criterion for evaluating discovery violations when the court must make its determination based on the facts of each case. A reading of the record reveals that the trial court gave careful consideration to the arguments and problems faced by both parties. The court did not err by concluding that LCCH committed a discovery violation.
Was there a less severe sanction? LCCH also argues that even if we assume that a discovery violation was committed, the trial court erred by imposing the severe sanction of exclusion of testimony and by failing to consider a lesser sanction.
This argument is without merit. A reading of the transcript demonstrates that the trial court was troubled by the answers to the Interrogatories and that the court was not pleased with LCCH's argument that the Interrogatories should have been worded a different way. At the time the motion in limine was granted, the court acknowledged that some limited evidence as to work performance had been admitted. However, after careful consideration, the court determined that this evidence was limited and not the focus of the testimony. The court decided to grant the motion in limine in part because Mr. Carlson's attorney agreed that he would not argue that LCCH should have taken a lesser disciplinary action against Mr. Carlson.
In short, the court here took many things into consideration when imposing the sanction. Moreover, it is interesting to note that LCCH does not suggest a lesser sanction in any of its briefs. At the reconsideration hearing, counsel suggested the court could have stopped the trial to permit additionally discovery. To a great extent, the court adopted a lesser sanction by also limiting Mr. Carlson's evidence and arguments.
Award of Attorney Fees. This court reviews the reasonableness of an award of attorney fees on an abuse of discretion standard. Rettkowski v. Dep't of Ecology, 128 Wash.2d 508, 519, 910 P.2d 462 (1996). The preferred method for determining attorney fees is the lodestar method. Henningsen v. Worldcom, Inc., 102 Wash.App. 828, 847, 9 P.3d 948 (2000). Under this method, the court first determines the lodestar fee by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. Id. (citing Bowers v. Transamerica Title Ins. Co., 100 Wash.2d 581, 593-94, 675 P.2d 193 (1983)). In rare instances, the lodestar is adjusted up or down to reflect other factors that were not already considered when calculating the lodestar fee. Id. (citing Mahler v. Szucs, 135 Wash.2d 398, 434, 957 P.2d 632, 966 P.2d 305 (1998)).
In its Finding of Fact and Conclusions of Law Re: Attorney's Fee Award, the trial court found that a two-thirds reduction of attorney fees argued by LCCH was improper. The court did find that some reduction of the fee was appropriate for unsuccessful theories, and the court deducted the amount of $5,832. The court also found that the "development of facts and theories of Plaintiff and his claims were interrelated and formed a basis for multiple theories as presented by Plaintiff at trial." CP at 20. Interestingly, the court was "somewhat surprised that Plaintiff's counsel brought this case to conclusion through a five day jury *546 trial and expended less than $38,000.00 of time." CP at 22.
The court concluded that the lodestar amount was $32,025.50. The court also determined that the nature of the work performed, as well as the quality performed, was appropriate for the application of a multiplier. The court applied a multiplier of 1.5 and awarded attorney fees in the amount of $48,038.25.
LCCH first contends the trial court erred when calculating the lodestar amount because the court failed to discount hours spent by Mr. Carlson on unsuccessful claims. However, the court did make a deduction for unsuccessful claims and LCCH makes no effort to explain what additional hours should be discounted or how the court should go about accomplishing an additional reduction for unspecified, unsuccessful claims. We accept the lodestar amount calculated by the trial court as there is no showing of an abuse of discretion.
LCCH next argues that the court erred by applying a 1.5 multiplier to the lodestar. The application of an adjustment to the lodestar amount is within the trial court's discretion, but there is a presumption that the lodestar amount represents a reasonable fee. Henningsen, 102 Wash.App. at 847, 9 P.3d 948. There are two categories to consider when adjusting the lodestar amount: (1) the contingent nature of the success, and (2) the quality of the work performed. Bowers, 100 Wash.2d at 598, 675 P.2d 193. When adjusting the lodestar to account for the risk factor, the trial court must assess the likelihood of success at the onset of the litigation. Id. This is an imprecise determination that is within the court's discretion. Id. In contrast, the adjustment for the quality of work is an extremely limited basis for adjustment. Id. at 599, 675 P.2d 193. In Bowers, the court allowed a 50 percent multiplier based on the risk factor, but rejected a 50 percent multiplier based on quality of work where there was nothing in the record to suggest that the work performed was significantly better than could be expected from attorneys who commanded the hourly rates used to calculate the lodestar. Id. at 601, 675 P.2d 193.
LCCH contends the court erred in applying a multiplier because there was nothing exceptional about the contingency nature of this case and there is no evidence to suggest that the hourly rates chargedranging from $150 to $200did not provide adequate compensation for work performed.
The court's findings support the adjustment upward based on the risk factor. The court concluded that the case was contingent, Mr. Carlson proceeded at considerable risk, defense counsel granted no concessions, and there was no assurance of recovery. However, whether the court's findings are sufficient to support a multiplier based on work quality is a different question. On the one hand, the court noted that "Mr. Kane's $200.00 per hour fee reflects the quality of work performed and is one of the higher hourly fees charged in this community." CP at 22. On the other hand, the court also noted that Mr. Carlson's representation was excellent and efficient, resulting in less time being spent and less attorney fees incurred. The court listed the documents reviewed when reaching its decision, including the pleadings and affidavits of Mr. Carlson's counsel.
We affirm the award of fees with the multiplier. The trial court was in the best position to determine whether such an award was proper in view of the risk factor, quality of work, and public issues involved in the lawsuit. We cannot say that its award was an abuse of discretion.
Cross-AppealClaim for General Damages. Mr. Carlson contends the trial court erred by dismissing his general damages claim. He takes the position that the violation of the promise of specific treatment in specific circumstances constitutes a violation of the process due a public employee whose employment is governed by a personnel handbook. He further contends that the termination of public employees contrary to the provisions of a personnel handbook by a public employer constitutes a tort of constitutional dimension.
Mr. Carlson's argument is based on the assumption that he has asserted a due process claim. Mr. Carlson did not plead a due process claim; he asserted claims against LCCH for breach of employment contract, *547 age discrimination, disability discrimination, and breach of promise of specific treatment. Moreover, Mr. Carlson did not argue a due process theory at the time he proposed his general damage instruction and verdict form. There is no basis to consider this new argument on appeal. See RAP 2.5(a); Washburn v. Beatt Equip. Co., 120 Wash.2d 246, 290, 840 P.2d 860 (1992). The fact that Mr. Carlson attempts to raise a claim of a constitutionally protected property interest does not support a claim that the trial court committed a "manifest error affecting a constitutional right" for purposes of RAP 2.5(a).
Mr. Carlson contends that his specific treatment claim sounds in tort and permits an award of general damages. He relies on Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081 (1984), and DePhillips v. Zolt Construction Company, 136 Wash.2d 26, 959 P.2d 1104 (1998), to support this argument. But neither Thompson nor DePhillips specifically address whether general damages are available to a party alleging breach of promise of specific treatment. See DePhillips, 136 Wash.2d at 37, 959 P.2d 1104; Thompson, 102 Wash.2d at 229-30, 685 P.2d 1081. In Gaglidari v. Denny's Restaurants, Inc., 117 Wash.2d 426, 444, 815 P.2d 1362 (1991), the court concluded that emotional distress damages are not recoverable in a breach of employment contract case. More importantly, in a recent case, the Supreme Court, referring to the breach of promise of specific treatment recognized in Thompson, stated that:
The law governing this exception is not a species of the employment at-will doctrine; it is the law of contracts. Therefore, the law of contracts governs an injured party's right to recover damages under this exception. Unlike a wrongful discharge, a breach of contract is neither immoral nor wrongful; it is simply a broken promise.

Ford v. Trendwest Resorts, Inc., 146 Wash.2d 146, 154-55, 43 P.3d 1223 (2002) (citations omitted).
Based on these cases, there is no merit to Mr. Carlson's argument that general damages are available here.
Attorney Fees on Appeal. Mr. Carlson seeks an award of attorney fees pursuant to RAP 18.1(a) and (b) and RCW 49.48.030. Mr. Carlson is entitled to an award of fees on appeal for successfully defending his wrongful termination judgment. However, Mr. Carlson is not entitled to an award of fees incurred related to his unsuccessful cross-appeal. See Kohn v. Georgia-Pacific Corp., 69 Wash.App. 709, 727, 850 P.2d 517 (1993). After Mr. Carlson has complied with RAP 18.1(d), the amount of the award shall be determined by a commissioner of this court. RAP 18.1(f).
We affirm the judgment and award Mr. Carlson his attorney fees on appeal.
BROWN, C.J., concurs.
SWEENEY, J. (dissenting).
Lake Chelan Community Hospital was denied the right to have a jury pass upon a central issue in this casethe effectiveness of the disclaimer language in its employee handbook. The handbook contains the following disclaimer on the very first page:
This Handbook is intended as a set of general guidelines and should not be construed as a contract or covenant of your employment.
Clerk's Papers at 332 (emphasis added).
And the plaintiff, Larry Carlson, believed it to be just that:
Q (By Mr. Kane) While you were a manager of the hospital, anybody ever tell you that the personnel handbook had any kind of disclaimer?
A I was told it was guidelines.
Report of Proceedings at 352.
The standard for judgment as a matter of law is rigorous: it should be granted only "when, viewing the evidence in a light most favorable to the nonmoving party, the court can say there is no substantial evidence or reasonable inference to support a verdict for the nonmoving party." Hiner v. Bridgestone/Firestone, Inc., 91 Wash.App. 722, 731, 959 P.2d 1158 (1998), rev'd in part on other grounds, 138 Wash.2d 248, 978 P.2d 505 (1999); CR 50(a)(2). Can it be said that "`no reasonable person could have found in favor of the nonmoving party'" on this question? *548 Hiner, 91 Wash.App. at 731, 959 P.2d 1158 (quoting Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 753, 818 P.2d 1337 (1991)). I do not think that categorical statement can be made.
The intention of these parties as to this disclaimer was a question of fact for the jury. Payne v. Sunnyside Cmty. Hosp., 78 Wash. App. 34, 39, 894 P.2d 1379 (1995).
The trial judge then improperly weighed conflicting evidence here and improperly decided this factual issue as a matter of law. I would reverse and remand for a new trial.
NOTES
[1] CP at 224.
[2] Anderson v. Mohundro, 24 Wash.App. 569, 604 P.2d 181 (1979).