[No. 21715-1-I. Division One. September 18, 1989.]

*In the Matter of the Estate of*
EDWIN AUSTIN FOSTER.

KATHRYN KOEHLER, *as Personal Representative, Appellant,* v. FIBREBOARD CORPORATION, ET AL, *Respondents.*

*Virginia M. Robinson, William Rutzick,* and *Schroeter, Goldmark & Bender,* for appellant.

*Michele Coyle, Kent T. van den Berg,* and *Gibson, Dunn & Crutcher; Daniel W. Ferm* and *Williams, Kastner & Gibbs; Mark S. Clark, Laurie L. Chyz, Gregory E. Keller,* and *Hillis, Clark, Martin & Peterson,* for respondents.

[As amended by order of the Court of Appeals October 30, 1989.]

PEKELIS, J.—Kathryn Koehler, as personal representative of the estate of Edwin Foster, deceased, appeals from a jury verdict in favor of defendants. The plaintiff brought a products liability action for improper design and lack of warnings against the above–named defendants, asbestos insulation manufacturers,[1] alleging that exposure to asbestos had resulted in Foster's developing mesothelioma. Foster's exposure allegedly occurred during the course of his employment at Puget Sound Naval Shipyard and Todd Shipyard in late 1944 and during the first three quarters of

---

[1]The action has been stayed as to one of the original defendants, Raymark Industries, Inc., due to a pending bankruptcy proceeding. Thus, issues pertaining only to Raymark are not decided here. The Clerk of the Court will issue a partial mandate, resolving this appeal as to all defendants except Raymark.

1945. After the jury returned its verdict for the defense, plaintiff moved for a new trial, which was denied.

On appeal, plaintiff raises the following issues: whether the trial court erred (1) in allowing and refusing to strike the testimony of defense expert Dr. Edward Gaensler; (2) in giving instruction 14 concerning the defense of compliance with a specific mandatory government contract specification; and (3) in admitting the deposition of defense witness David Innes, taken in another action, on behalf of defendant Owens–Illinois. We affirm.

## I
### Motion To Exclude Expert Testimony

A pretrial "style" order issued in 1984 for all asbestos cases in King County required expert witness disclosure 77 days prior to trial. The order further required disclosure of the name, address and telephone number of the expert; the subject matter of the expert's testimony; the substance of the facts and opinions to which the expert was expected to testify; and a summary of the grounds for each opinion. Defendants admitted that they had failed to comply with this pretrial style order with regard to Dr. Gaensler. However, his name was among the witness names read to the jury on the first day of the trial.

During argument on plaintiff's motion to exclude Gaensler's testimony, plaintiff's counsel admitted that he was told on Tuesday, October 27, 1987, that Gaensler probably would be called, and that he then began gathering some material on Gaensler from others familiar with his opinions. The defendants tentatively scheduled Gaensler to appear the following Monday, November 2, 1987, and confirmed that schedule with plaintiff's counsel on Thursday, October 29, 1987. On Friday, October 30, plaintiff's counsel moved to exclude Gaensler's testimony. The trial court denied the motion after argument, but ordered defendants to disclose copies of Gaensler's resume and certain trial and deposition transcripts, together with a written summary of the facts and opinions to which he was expected to testify and the

grounds for each opinion. Defendants' counsel made a disclosure to plaintiff's counsel on Saturday, October 31.

Plaintiff's counsel did not object to any inadequacy in the disclosure at any time prior to Gaensler's testimony on November 2, 1987. This testimony included his opinion both as to when the medical community learned that asbestos exposure could cause mesothelioma and when the medical community learned that asbestos could cause lung cancer. He was cross–examined at length. Following the conclusion of his testimony, plaintiff moved that it be stricken. This motion was denied on the grounds that plaintiff had suffered no undue prejudice.

On appeal, plaintiff argues that the trial court abused its discretion in admitting and refusing to strike the testimony of Gaensler, asserting that the defendants willfully violated two court orders to disclose. Plaintiff argues that she need not show prejudice to her case since the defendants' violations were willful. The defendants reply that plaintiff must show both willful noncompliance and prejudice and that she has shown neither. Alternatively, they argue that plaintiff failed to preserve this issue since she did not object to the responsiveness of their supplemental disclosures prior to Gaensler's testimony.

 Exclusion of testimony is an extreme sanction. Thus, it is an abuse of discretion to exclude testimony as a sanction for discovery violations absent a showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct. *See Rice v. Janovich,* 109 Wn.2d 48, 56, 742 P.2d 1230 (1987). A "willful" violation means a violation without a reasonable excuse. *Gammon v. Clark Equip. Co.,* 38 Wn. App. 274, 280, 686 P.2d 1102 (1984), *aff'd,* 104 Wn.2d 613, 616, 707 P.2d 685 (1985) (declining review on discovery issue). Thus, even an inadvertent error in failing to disclose an expert witness has been deemed willful, justifying exclusion of testimony. *Falk v. Keene Corp.,* 53 Wn. App. 238, 767 P.2d 576, *review granted,* 112

Wn.2d 1016 (1989). Since there is no reasonable excuse for the noncompliance here, we conclude it was "willful".

■ Plaintiff is incorrect, however, in arguing that where a violation is willful, no prejudice need be shown. It is only where willful noncompliance substantially prejudices the opponent's ability to prepare for trial that the exclusion of evidence is within the trial court's discretion. *See Hampson v. Ramer*, 47 Wn. App. 806, 812, 737 P.2d 298 (1987).

Here, plaintiff was not prejudiced. After defense counsel's initial nondisclosure, extensive disclosure was made in compliance with the trial court's second order. Plaintiff's counsel did not object to the adequacy of these disclosures prior to Gaensler's testimony. Even if he had objected, it appears from a review of the record that the trial court could well have found that the second disclosure adequately covered the subject matter of Gaensler's testimony.

In addition, Gaensler was a witness on the state of the art of the development of medical knowledge with regard to asbestos hazards. This is a common area for expert testimony in such cases, and one with which experienced plaintiffs' counsel such as those in this case would surely have familiarity. Our review of the record confirms the trial court's conclusion that counsel's cross examination of Gaensler displayed no area of uncertainty; indeed, it demonstrated an extremely high level of preparation.

In an attempt to demonstrate some prejudice, plaintiff is able to point only to the fact that counsel was not able to ask Gaensler his opinion of plaintiff's expert witness. Being unable to safely ask that question does not rise to a level of inability to prepare a theory for trial. Thus, the case is distinguishable from those in which noncompliance with a discovery order was found to prejudice a party's ability to prepare for trial or to develop a theory of recovery. *See, e.g., Taylor v. Cessna Aircraft Co.*, 39 Wn. App. 828, 835–37, 696 P.2d 28, *review denied*, 103 Wn.2d 1040 (1985).

In sum, plaintiff suffered no prejudice and thus there was no abuse of discretion in allowing Gaensler to testify.

## II
### SPECIFIC MANDATORY GOVERNMENT CONTRACT SPECIFICATION INSTRUCTION

Five of the six defendants in this action, all but Owens–Illinois, manufactured either asbestos–containing cements or cloth products. They presented testimony that their cement products were in compliance with certain government specifications requiring that those products contain asbestos. Ben Bradley, a witness called by the plaintiff, testified that as an asbestos application supervisor, he had to use products that conformed to government specifications. Documents detailing the specifications relevant to the particular products involved were admitted.

Additionally, defendants presented the deposition testimony of John Haas, Chairman of the Ships Specification Control Board of the United States Navy, who described the specification process. He testified that it was a Department of Defense policy to consult manufacturers about the text of military specifications during the drafting process. Proposed military specifications would be sent to large numbers of potential suppliers, for the purpose, in part, of obtaining their comments on the availability of materials the Navy needed. This was done so that the specifications could be drafted to conform to existing products, specifically, existing thermal insulation products. Indeed, with regard to thermal insulation products, Haas knew of no instance in which a military specification was established where there was not an existing product in the market.

On the basis of the above evidence, the trial court, over plaintiff's objection, gave the jury instruction 14 proposed by the defendants.[2] The instruction is derived from RCW

---

[2]Instruction 14 reads: If you find that the injury–causing aspect of the asbestos cloth and/or cement was at the time of manufacture, in compliance with a specific mandatory government contract specification relating to design, your verdict shall be for the defendant on the issue of design of such product.

"The burden of proving this defense by a preponderance of the evidence is on the defendant asserting the same."

7.72.050(2) which provides an absolute defense for manufacturers of allegedly defective products that comply with a specific mandatory government contract specification relating to design.[3]

Plaintiff contends that the government specifications defense should not apply where a contractor has engaged in discussions or negotiations with the government regarding the development of such specifications. She relies for this interpretation of RCW 7.72.050 on the statute's legislative history.[4] The defendants assert that the statute is not ambiguous and that resort to legislative history to interpret it is therefore unnecessary.

■■ This court will not construe unambiguous statutory language. *King Cy. v. Taxpayers,* 104 Wn.2d 1, 5, 700 P.2d 1143 (1985). RCW 7.72.050(2) on its face requires only that the product complied "with a specific mandatory government contract specification" in order for the defense to be applicable. This language is not ambiguous. It cannot be read to deny a manufacturer the defense simply because, as here, the government consulted the manufacturer about the

---

[3]RCW 7.72.050(2) provides: "When the injury–causing aspect of the product was, at the time of manufacture, in compliance with a specific mandatory government contract specification relating to design or warnings, this compliance shall be an absolute defense".

[4]RCW 7.72.050(2) was derived from an amendment proposed by a Senate committee to a comprehensive tort reform bill. During a colloquy on the Senate floor, a member of that committee explained the meaning of the term "mandatory government contract specification" as follows:
"A mandatory government contract specification is one which is developed by the government and imposed upon the contractor as part of a contract between the government and contractor for production of a product. It would not cover contract specifications developed following negotiations or discussions between the government and the contractor. These latter kinds may be mandatory in the sense that compliance is required under the contract but they are not mandatory as that term is used in this section."
Senate Journal, 47th Legislature (1981), at 616.

*availability* of the asbestos products.[5] The trial court did not err in giving the instruction.

## III
### ADMISSION OF DEPOSITION TESTIMONY UNDER ER 804

One of the issues in the case was whether Owens–Illinois had manufactured or distributed an asbestos insulation product on the West Coast in late 1944 or at any time during 1945, the relevant time period during which Foster worked in the shipyards. Plaintiff's witness, Ben Bradley, who had ordered products in the course of his job as supervisor of asbestos application at the Seattle shipyard, placed the Owens–Illinois product, "Kaylo", in the Seattle shipyard during 1945. Bradley identified a container with a "Kaylo" label as one of the products in the Seattle yard in 1945.

Owens–Illinois contradicted that testimony with that of a Kaylo division manager, Samuel Schillaci, who testified that prior to 1946 Kaylo was distributed only in blank cartons and in limited amounts to only a few customers. Although Schillaci claimed no knowledge of the purchasers of Kaylo during 1944 and 1945, he did testify that the United States Navy had purchase approval for the product under the designation "K–Lo" as of May 29, 1944.

Over plaintiff's objection, the trial court admitted portions of the deposition testimony of David Innes, project engineer at one of the Owens–Illinois plants that apparently manufactured "K–Lo" in the early 1940's. The Innes deposition had been designated in a "style notice" for all King County asbestos cases where plaintiffs were represented by the law firm of Schroeter, Goldmark & Bender. Although this firm also represented the plaintiff herein, Innes had been deposed by another attorney from the

---

[5]Conceivably, a case could arise in which the evidence demonstrates consultation and negotiation which is so intense and one sided that the "contract specification" is constructively the manufacturer's and not the government's. In such a case the defense would not apply. However, we do not decide that issue, since there is no such evidence here.

Schroeter firm in the course of representing a different client. Since that client was claiming injury as a result of exposure to Kaylo in 1944 or prior, counsel for Owens–Illinois had allowed Innes to testify only "about the 1942 to roughly 1945 period." Innes testified that the production levels were so low in the years prior to 1944 that none could have been sold on the West Coast until 1947. He further testified that it was not called "Kaylo" in 1944 and that no cartons with the name "Kaylo" were distributed during the time period "1942 to 1945". It was "some time after 1945" that the first boxes with the name "Kaylo" were developed.

The Innes deposition was admitted pursuant to ER 804(b)(1).[6] The trial court concluded that the deposition fits within this exception to the hearsay rule since the declarant was unavailable, the deposition had been taken in compliance with the law, and the prior proceeding had been similar in nature.

Plaintiff contends that the admission of Innes' deposition testimony was error since the plaintiff in the case in which Innes was deposed was not a "predecessor in interest". She argues that since the time frame of their respective exposures was different, counsel in the prior action had no "similar motive" to develop testimony regarding 1945. Owens–Illinois, the only defendant to which this issue applies, admits that the testimony regarding 1945 events may not have been as fully developed as plaintiff might have wished, but argues that the prior counsel did have a similar opportunity to develop such testimony. Owens–Illinois further argues that Innes' testimony was merely cumulative of defense witness Schillaci's.

---

[6]ER 804 provides:

"**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

■ We agree with Owens–Illinois that Innes' testimony was substantially duplicative of Schillaci's.[7] Both testified to the fact that Kaylo was distributed only in blank cartons during the relevant time period. Both also testified that production levels of Kaylo were low at least through early 1944. Although Innes was not permitted in his deposition to testify specifically about production levels in late 1944 or 1945, he did testify that the product would not have arrived on the West Coast until 1947. Nothing in the record suggests that his conclusion would have been different if counsel had been examining him vigorously with regard to 1945.

Viewing the Innes deposition testimony as a whole, therefore, the trial court did not abuse its discretion in allowing it as general background to the early production levels of the Owens–Illinois product.

Affirmed.

WINSOR, J., and DEIERLEIN, J. Pro Tem., concur.

After modification, further reconsideration denied October 30, 1989.

Review denied at 114 Wn.2d 1004 (1990).

---

[7]It is thus unnecessary to determine whether the prior plaintiff had a similar opportunity to develop this testimony. *See Complaint of Paducah Towing Co.,* 692 F.2d 412, 418 (6th Cir. 1982) ("similar opportunity" necessary to ensure the trustworthiness of testimony).