

**FILED**
**OCT 7, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | |
| | ) | No. 31299-2-III |
| DAWN D. NEUMILLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | OPINION PUBLISHED IN PART |
| | ) | |
| STEVEN R. NEUMILLER, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — In a marriage dissolution proceeding, does one party have to plead the existence of a pre-marital committed intimate relationship in order to consider that relationship when characterizing property as separate or community? Appellant Dawn Neumiller appeals from the dissolution of her marriage to respondent Steven Neumiller, alleging several errors at trial. We agree only with her contention that the trial court should have considered *evidence* of the existence of a committed intimate relationship before characterizing the two most significant assets before the court and remand for the trial court to do so. In all other regards we affirm.

## FACTS

The Neumillers met in 1996; both had previously been married and had children from their previous relationships. Ms. Neumiller lived with her children in a home on

West 10th Avenue in Spokane that was owned by her parents. She had rented the home from her parents since 1990 under what she described as a "rent to own" agreement.

Ms. Neumiller became pregnant in 1998 by Mr. Neumiller and he moved in to the 10th Avenue home at that time and took over making the monthly house payments. The couple's son was born in November 1998. In 1999, Mr. Neumiller purchased the 10th Avenue house by taking out a mortgage to finance it after first selling his own home.[1] The mortgage was solely in Mr. Neumiller's name.

The couple's second child, a daughter, was born in November 2000. The mother cared for the children and did not have an occupation outside of the home except for some occasional sewing work. The father worked from the house as a consultant and grant writer. The couple married in January 2005. As before the marriage, the finances were largely kept separate, with Mr. Neumiller managing his separate assets and also paying any community costs and debts.

Ms. Neumiller initially filed for dissolution of the marriage in 2009, and moved out of the 10th Avenue house with the children that October. The dissolution petition

---

[1] Although the trial court commented in its oral remarks that Mr. Neumiller had used the proceeds from the sale of his house to help fund the purchase of the 10th Avenue house, the testimony was to the contrary. Ms. Neumiller testified that Mr. Neumiller lost money on the sale of his house, while Mr. Neumiller testified that the funds used to purchase the 10th Avenue house came from the mortgage. It may be that one of the exhibits addressed this issue, but none of them have been made part of the record on appeal.

was dismissed the following year. Ms. Neumiller filed a new dissolution petition on May 26, 2011. It asserted that the parties had married in Idaho on January 28, 2005, and had separated October 20, 2009. Mr. Neumiller turned 62 in October 2011, and took early retirement. He began receiving social security payments and wound down his business affairs. Each of the children also began to receive a monthly social security check.

Ms. Neumiller's original counsel was disbarred. She proceeded pro se for a while, but a new attorney took over shortly before the scheduled trial date. The parties filed a joint trial management report in which the wife claimed the 10th Avenue house was community property, while Mr. Neumiller alleged it was his personal property. Ms. Neumiller contended that the American Funds retirement account, valued at nearly $71,000, also was community property, while Mr. Neumiller contended that the account was his separate property.

The matter proceeded to trial. On the day of trial, the husband filed his response to the petition and the wife filed an amended petition. The amended petition listed the separation date of the couple as May 26, 2011, the date that the original 2011 dissolution petition was filed. The amended petition again stated that the couple had married in Idaho on January 28, 2005, but included an additional sentence: "The parties cohabited in a marriage like relationship since the fall of 1998." Clerk's Papers (CP) at 257.

Mr. Neumiller's counsel moved in limine to prevent Ms. Neumiller from presenting evidence relating to a committed intimate relationship since she had not

pleaded the matter in her original petition. The trial court deferred ruling on the motion and permitted the parties to testify as they wished. Ms. Neumiller testified concerning the couple's pre-marriage relationship and asked to be awarded half of the equity in the house and half of the American Fund account. After Ms. Neumiller rested her case, Mr. Neumiller moved for a directed verdict on the committed intimate relationship matter. The court reserved its ruling.

Trial concluded the following day. The parties returned to court five weeks later to learn the judge's decision. The trial court declined to entertain the committed intimate relationship issue, reasoning that it had been raised "way too late in the game for the Court to consider it here." Report of Proceedings (RP) at 219-20. The court characterized both the house and the American Fund account as Mr. Neumiller's separate property. The court awarded each party its separate property. The community property, valuing less than $13,000 and consisting primarily of vehicles, was awarded to the person in possession of the item.[2] Mr. Neumiller also was assigned the bulk of the community debt, including nearly $22,000 owed on a line of credit.

After entry of the decree of dissolution, Ms. Neumiller then appealed to this court.

---

[2] Ms. Neumiller received approximately $8,200, less nearly $6,700 in community debt, while Mr. Neumiller received approximately $4,600 in community property, but his share of the community debt reduced his position to negative $15,381.

ANALYSIS

Ms. Neumiller raises four contentions in this appeal. We initially address her argument that the court erred in not considering the committed intimate relationship in its characterization of the nature of the house and the American Fund account. She also argues that the court erred in determining that the couple separated in 2009 rather than 2011, in not imputing additional income to Mr. Neumiller after his retirement, and in not awarding her attorney fees at trial. Mr. Neumiller argues that he should receive attorney fees for responding to a frivolous appeal. We address the remaining issues in the order stated.

*Evidence of Committed Intimate Relationship*

Mr. Neumiller contends that Ms. Neumiller had to plead the committed intimate relationship issue in a timely fashion and that the trial court acted within its case management authority in declining to consider the late issue. Ms. Neumiller argues there is no pleading requirement for evidentiary consideration of the existence of a committed intimate relationship in a marriage dissolution proceeding. We agree with Ms. Neumiller and remand for consideration of this evidence.

The husband properly notes that trial courts are accorded great discretion in family law matters due to the need for finality and certainty. *E.g., In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). He correctly argues that this standard governs all of Ms. Neumiller's issues. Whether or not to allow an amendment to the pleadings

rests with the discretion of the trial court. *E.g.*, *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). The distribution of property and debt is reviewed for manifest abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005); *Baird v. Baird*, 6 Wn. App. 587, 591, 494 P.2d 1387 (1972). Whether or not to award a party maintenance or attorney fees likewise is reviewed for abuse of discretion. *In re Marriage of Terry*, 79 Wn. App. 866, 869-71, 905 P.2d 935 (1995).

In turn, discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Discretion also is abused when the court uses an incorrect legal standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995).

RCW 26.09.080 requires consideration of four factors[3] in reaching a "just and equitable" property division. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A deferential standard of review is applied to the trial court's consideration of these factors because it is "in the best position to assess the assets and liabilities of the parties" in order to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). Although all property is before the court for distribution, characterization of the property as

---

[3] Those factors include the nature and extent of (1) the community property and (2) the separate property of the parties, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. RCW 26.09.080.

community or separate is a necessary step to take before making a distribution. *Id.* at 766; *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). Appellate courts review property characterization rulings de novo. *In re Marriage of Chumbley*, 150 Wn.2d 1, 5, 74 P.3d 129 (2003).

Somewhat analogous standards apply to characterizing and distributing property following the end of a committed intimate relationship. This division of property must be just and equitable. *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984). Once the trial court makes a determination that a committed intimate relationship exists, it then (1) evaluates the interest each party has in the property acquired during the relationship, and (2) distributes the property in a just and equitable manner. *Id.* The distribution does not have to be equal. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

Various presumptions aid courts in determining whether property is community or separate. *In re Estate of Borghi*, 167 Wn.2d 480, 483-84, 219 P.3d 932 (2009). The date of acquisition is the primary determinant. *Id.* at 484 [*citing* Harry M. Cross, *The Community Property Law in Washington*, 61 Wash. L. Rev. 13, 39 (1986)]. Once the characterization is made, the property is presumed to retain that character until such time as it has been overcome with evidence of an intent to change that characterization. *Borghi*, 167 Wn.2d at 484-85, 491-92. The presumption can only be overcome by clear and convincing evidence. *Id.* at 485 n.4. There is a "weak presumption" in favor of

community property that exists until a presumption in favor of community or separate property arises. *State ex rel. Marshall v. Superior Ct.*, 119 Wash. 631, 637, 206 Pac. 362 (1922). This weak presumption gives way upon a preponderance of the evidence. *Id.*

If property is acquired when a party is involved in a committed intimate relationship, it is presumed to be jointly owned. *In re Estate of Langeland*, 177 Wn. App. 315, 324-25, 312 P.3d 657 (2013). This presumption can be overcome by clear and convincing evidence that shows the separate nature of the funds used to acquire the property. *Id.* at 325.

We have stated these standards at some length because the committed intimate relationship argument was critical to the characterization of the house and the American Fund account as either community-like or separate property. The house was acquired during the period of time after Ms. Neumiller alleged the committed relationship began; she also alleged that Mr. Neumiller made deposits to the account during that time period.

The trial judge accepted Mr. Neumiller's argument that the committed intimate relationship claim was raised too late by the amended pleading. This argument implicitly assumed that the existence of a committed intimate relationship needed to be pleaded before the trial court could consider its existence. While that certainly must be the case when a proceeding is instituted to distribute property acquired during a committed intimate relationship, we do not believe that it needs to be pleaded when it is merely an evidentiary fact in a marriage dissolution proceeding. Like any evidence, or theory of a

case, it typically would be disclosed in pre-trial discovery, but evidence does not need to be included in the pleadings before it is admissible at trial.

A trial court has authority to exclude from trial any evidence that was willfully not disclosed during discovery if there was substantial prejudice from the violation. *In re Estate of Foster*, 55 Wn. App. 545, 548, 779 P.2d 272 (1989). If this had been such a situation, we would review for abuse of the trial court's discretion. *Id.* However, that is not what happened here. Mr. Neumiller did not claim a discovery violation. Rather, he sought exclusion on the basis that the amended petition arrived too late in the process. In other words, the committed intimate relationship needed to be pleaded in order to be considered. By agreeing with that proposition, the trial court erred as a matter of law and necessarily abused its discretion. *Rundquist*, 79 Wn. App. at 793.

Here, there should have been no surprise to Mr. Neumiller what Ms. Neumiller was hoping to accomplish. The facts concerning the couple's pre-marriage relationship were well known to both. He moved in to her home, bought the house from her parents, and conceived and raised two children there for several years before marrying. She claimed in the joint trial report that the house, and the American Fund account, were community property rather than simply property to which the community might have some interest. Since property is characterized at the time of acquisition, Mr. Neumiller was on notice that the couple's relationship at that time was at issue because she did not agree it was his separate property.

9

Ms. Neumiller presented sufficient interest of a marriage-like relationship for the court to consider the matter in its characterization of the property at issue. With respect to the house, Ms. Neumiller established that it was purchased while the couple lived in it with one child. On the basis of the evidence, the trial court could find that the house was community-like property since it was acquired during a marriage-like relationship. With respect to the American Fund, the evidence established that it was created four years before the committed intimate relationship might have arisen. There was testimony from Mr. Neumiller that only $8,000 was added to the fund between 1998 and 2002, and nothing after that point. Thus, Ms. Neumiller failed to show that this fund was community-like property. At most, the evidence would justify a community lien on a small portion of the fund contributed during the committed intimate relationship.

We remand for the court to consider the evidence of the existence of a committed intimate relationship and, if existent at the time, its effect on the characterization of these two pieces of property. *See Lindsey*, 101 Wn.2d at 307. The court may re-open the property distribution if it should find that either property is not solely Mr. Neumiller's. *Id.*

A majority of the panel having determined that only the forgoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Date of Separation*

Ms. Neumiller next contends that the trial court erred in finding that the parties separated in 2009, at the time of the initial dissolution petition rather than in 2011, when the second petition was filed. The evidence supported the trial court's determination.

We review a court's factual findings for substantial evidence. *Dorsey v. King County*, 51 Wn. App. 664, 668-69, 754 P.2d 1255 (1988). Substantial evidence is that evidence which "would persuade a fair-minded person of the truth or correctness of the matter." *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 33, 226 P.3d 263 (2010).

Ms. Neumiller's own pleadings supported the court's determination—both the 2009 petition and the first 2011 petition stated October 2009, as the date of separation. More importantly, Mr. Neumiller testified that the parties separated in 2009, when Ms. Neumiller and the children left the house; the couple never lived together thereafter. The trial court was free to credit that testimony against conflicting testimony from Ms. Neumiller.

Substantial evidence supported the finding.

*Imputation of Income to Mr. Neumiller*

Ms. Neumiller next takes issue with the trial court's failure to impute additional income to Mr. Neumiller once he took early retirement and in imputing income to her in the same amount. The trial court did not abuse its discretion in declining to require that

he return to work or in determining that his social security payments were his sole income, nor did it err by imputing that same income level to her.

We review these issues for abuse of discretion. *In re Marriage of Wright*, 78 Wn. App. 230, 234, 896 P.2d 735 (1995). Imputation of income is governed by RCW 26.19.071(6). It states in relevant part:

> (6) **Imputation of Income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. A court shall not impute income to a parent who is gainfully employed on a full-time basis.

"Voluntary underemployment" has not been defined in Washington, but we believe that it should be treated similarly to voluntary unemployment that has been defined as "unemployment that is brought about by one's own free choice and is intentional rather than accidental." *In re Marriage of Brockopp*, 78 Wn. App. 441, 446 n.5, 898 P.2d 849 (1995).

With respect to Mr. Neumiller, we believe the trial court had tenable grounds for not imputing income to him. He had reached retirement age and we believe most courts will not second-guess a determination that it is time to stop working. He also explained to the court that his existing work contracts were ending and that with the worsening economy there were no prospects in the offing, so it was a good time to close his business. One additional effect of the retirement was that it brought support payments for

12

both children to the family unit. For all of these reasons, we believe the trial court had very tenable grounds not to require more of him.

Ms. Neumiller also argues that the court erred in failing to include additional income, primarily final payments being received for his consulting work, to Mr. Neumiller's income. However, he testified that these were not recurring payments and there was no expectation that they would continue. RCW 26.19.075(1)(b) permits a deviation from income calculation for nonrecurring income. The trial court, accordingly, did not abuse its discretion in accepting Mr. Neumiller's explanation that the payments would not continue in the future.

Finally, Ms. Neumiller also takes issue with the trial court's decision to impute income to her at minimum wage in the same amount as Mr. Neumiller was receiving from social security. Again, the trial court had a tenable basis for acting. Ms. Neumiller was capable of minimum wage work and calculating income on that basis resulted in monthly income of $1,554.[4] Reducing that figure by $17 to match Mr. Neumiller's income did not harm Ms. Neumiller. As trier of fact, the trial judge was free, as he did, to disregard Ms. Neumiller's claim that she was too ill to find regular work.

---

[4] The minimum wage in Washington in 2012 was $9.04 per hour. *Changes in Basic Minimum Wages in Non-Farm Employment Under State Law: Selected Years 1968 to 2013*, UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION, *available at* http://www.dol.gov/whd/state/stateMinWageHis.htm. Forty hours a week and 4.3 weeks per month equals $1,554 per month.

The trial court did not abuse its discretion in establishing the income levels for both Mr. Neumiller and Ms. Neumiller.

*Attorney Fees*

Ms. Neumiller argues that the court erred in not awarding her any attorney fees at trial. Both parties seek attorney fees in this appeal.

In a dissolution action, the trial court has authority to award attorney fees under RCW 26.09.140 after considering the needs and financial resources of both parties. We review the court's ruling for abuse of discretion. *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011).

Here, the trial court found that Ms. Neumiller had sufficient financial need to support a fee award, but concluded that Mr. Neumiller did not have the resources to pay her fees given that he had paid the guardian ad litem fees and would have to pay his own attorney. With retirement, the court determined that Mr. Neumiller was "barely keeping his head above water financially." RP at 237. The husband's inability to pay was a tenable basis for declining to require him to pay attorney fees to Ms. Neumiller.

For similar reasons we decline to award fees in this appeal. We have little doubt that Ms. Neumiller still has financial need, but there also is no reason to believe that Mr. Neumiller's financial situation has changed sufficiently to require him to pay her fees. We exercise our discretion and decline to award fees on appeal.

14

Mr. Neumiller also seeks fees for what he alleges is a frivolous or sanctionable appeal. We disagree. Ms. Neumiller has prevailed in part, and may or may not prevail on remand. Her appeal was not frivolous. We also believe that any deficiencies in briefing did not rise to the level of requiring a sanction. Both this court and respondent were able to address the issues presented.

We affirm the trial court in most respects, but remand this issue for the court to consider whether a committed intimate relationship existed and, if so, to take appropriate action.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, C.J.

15