IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHNSON BROTHERS CONTRACTING, INC., | ) ) ) | No. 32165-7-III |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| CHARLES L. BLEVINS and JANE DOE BLEVINS; and ZINE A. BADISSY and JANE DOE BADISSY, d/b/a BLACK ROCK ORCHARDS, a sole proprietorship, | ) ) ) ) ) ) | |
| Respondents, | ) ) | |
| MT. ADAMS TRUCKING, INC; DENNY AMES and JANE DOE AMES; and TIM DUKE and JANE DOE DUKE, | ) ) ) ) | |
| Defendants. | ) | |

SIDDOWAY, C.J. — Several days into a bench trial of Johnson Brothers

Contracting Inc.'s action for damages to its heavy equipment, a Yakima County Superior

Court judge declared a mistrial after Johnson Brothers suddenly located and produced

photographs of the damage—photographs its owners earlier believed had been lost.

Johnson Brothers appeals, assigning error to the order declaring a mistrial and the trial

court's sanction imposing the $16,000 in attorney fees and costs incurred in the aborted

trial by defendants Zine Badissy, Charles Blevins, their marital communities, and their sole proprietorship, Black Rock Orchards (collectively Black Rock).

Johnson Brothers argues that its late production of the photographs resulted from an innocent mistake by a third party. It also argues that where the case was being tried to a judge rather than a jury, Black Rock could not reasonably complain of prejudice because the photographs contradicted its trial theory.

The photographs were known to be important evidence, were the subject of a timely discovery request by Black Rock, and were not produced as the result of omissions of Johnson Brothers' lawyers that the court found to be unintentional but unreasonable. By the time the photographs were produced, Black Rock, not having seen them, had proceeded with a defense that Johnson Brothers' lawyer observed at the time "crumble[d]" with the photographs' production. 3 Report of Proceedings (RP) at 243. The trial court's response to the situation was a reasonable response to the circumstances presented. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Johnson Brothers is a tree removal business located in Kennewick. It specializes in removing fruit trees and grinding them for recycling use. In June 2007, Johnson Brothers entered into a contract with Black Rock Orchards, a sole proprietorship conducted by Charles Blevins and Zine Badissy, to remove windbreak trees surrounding its orchard located east of Moxee. Johnson Brothers began its work at the orchard on

2

August 24 by moving to the orchard a fleet of heavy equipment that included a front-end loader, a John Deere excavator, and a skidder used for chipping.

Johnson Brothers finished work at the Black Rock Orchards property on September 5, and two of its employees arrived at the orchard early on the morning of September 6 to prepare the equipment so that truckers could haul it to the next work site. Upon arrival, they discovered that some of the company's equipment had been badly damaged. Another machine was missing a large amount of hydraulic fluid.

One of the Johnson Brothers employees, Richard Holcomb, called his manager, Brent Deroo, to report what had happened. Mr. Deroo told Mr. Holcomb to take photographs to document the damage, call the sheriff's department, and come in to the office to make a report. Mr. Holcomb complied and was told that sheriff's deputies would be out to investigate in the afternoon.

Mr. Holcomb returned to the Black Rock Orchards property that afternoon to meet the sheriff's deputy, and while he was waiting, Tim Duke and Denny Ames, who were associated with Mt. Adams Trucking, arrived at the site where Mr. Holcomb had traced oil spills and found a broken windshield from the excavator that morning. They too had been doing work for Black Rock Orchards. Mr. Holcomb confronted Mr. Duke and Mr. Ames about using Johnson Brothers' equipment, and the two men admitted that they had been using the equipment at night, claiming they were given permission to use it by Mr. Blevins. They also admitted damaging the equipment while using it. The sheriff's

3

deputy arrived toward the end of Mr. Holcomb's discussion with Mr. Duke and Mr. Ames, and the two Mt. Adams employees were then questioned by the deputy.

The photographs of the damage that had been taken by Mr. Holcomb were later delivered by Mr. Holcomb or Mr. Deroo to Johnson Brothers' attorney at the time, Toni Meacham. Because the damaged equipment was hauled away before the sheriff's deputy arrived and was promptly repaired, the photographs were the only tangible evidence documenting the damage.

In December 2007, Ms. Meacham filed suit on behalf of Johnson Brothers against Mr. Ames, Mr. Duke, and Mt. Adams. The lawsuit was later dismissed without prejudice.

Thereafter, in August 2009, David Trujillo, who had taken over Johnson Brothers' representation in connection with the loss, filed a second action. This time, he named as additional defendants Messrs. Blevins and Badissy, doing business as Black Rock Orchards, and their respective marital communities.

According to declarations later filed in the case, no photographs had been included in the legal file that Ms. Meacham passed along to Mr. Trujillo. Having been told by his client's representatives that photographs were taken and had been given to Ms. Meacham, Mr. Trujillo asked her to check and see if she had them; she reported that she could not find any. Mr. Trujillo later inquired of the sheriff's department whether his client's

4

photographs had been provided to them. Department employees could not find photographs in a search of their files.

In October 2009, Black Rock answered the complaint, asserting a cross claim against Mr. Ames and Mr. Duke, doing business as Mt. Adams Trucking. Mr. Ames had failed to answer Johnson Brothers' complaint, and Johnson Brothers had obtained a default judgment against him. But Black Rock proved unable to secure service of process on either Mr. Ames or Mr. Duke. Lawyers for Johnson Brothers and Black Rock reached a gentleman's agreement that they would notify each other if and when they ever located Mr. Ames.

In November 2010, Black Rock served Johnson Brothers with a request for production of documents that included a request for production of any photographs supporting its damage claim. Mr. Trujillo again inquired of Ms. Meacham in late November, and she again reported that she could not find any photographs. According to Ms. Meacham, she heard nothing back and assumed that the photographs had been found elsewhere.

Neither the request for production nor Mr. Trujillo's responses are included in the record on appeal. When the trial court later asked Black Rock's counsel to read the request that had been made for photographs, counsel responded:

> "Produce a copy of all documents that support your itemization of damages. Definition of documents: broad as possible meaning, all written, graphic, printed, or recorded matter, reports, photographs, or other paper or tangible

documents, pictures" and it goes on. I'm paraphrasing but those are all direct words.

3 RP at 242. The court's findings state that "[v]ia its response, the plaintiff did not indicate that photographs had once existed but simply could not be found, nor any explanation as to why the photographs could not be found." Clerk's Papers (CP) at 152. When asked by the trial court whether he agreed the photographs would have been responsive to the request, Mr. Trujillo stated, "Absolutely, Your Honor. It was the biggest frustration of this whole case." 3 RP at 243. It is undisputed that Mr. Trujillo signed a CR 26(g) certification confirming that his client's discovery answers and production followed a diligent search of all evidence and records within his client's and Mr. Trujillo's possession, custody, and control, after consultation with all persons with any knowledge of the facts.

According to Mr. Trujillo, he informed defense counsel that photographs of the damages to the equipment had been taken, and that while Mr. Holcomb and Mr. Deroo thought that they had given the photographs to Ms. Meacham, they "were not sure exactly what happened to the pictures or where they were if the attorneys didn't have them." CP at 45. Mr. Trujillo also claims that he told defense counsel he would give him the pictures when and if he found them.

Documents produced to Black Rock by Johnson Brothers included employee time cards reflecting time spent by Mr. Holcomb taking pictures of the damaged equipment.

6

When deposed by the defendants, Mr. Deroo and Mr. Holcomb were asked about the photographs. They reportedly affirmed that photographs had been taken but stated they had no knowledge of the whereabouts of the photographs. Both described the damages they had seen.

On the eve of trial, Mr. Trujillo located Mr. Ames. Defense counsel expressed frustration at the timing of Mr. Ames' appearance and moved for a continuance. The court denied the request but conditioned Mr. Ames' testimony at trial on his making himself available for deposition beforehand. Mr. Ames was deposed the evening before the first day of trial.

What was projected to be a two-day trial began on Wednesday, September 11, 2013. On September 11 and 12, Johnson Brothers called as witnesses Mr. Deroo and then Mr. Holcomb. Black Rock's lawyer cross-examined both witnesses about the importance of the ostensibly lost photographs, planning to argue that a negative inference should be drawn from Johnson Brothers' failure to produce them.[1] When trial was not

---

[1] Black Rock cross-examined Mr. Deroo as follows:

Q. Are you aware of any photographs that exist of these damages that you claim occurred to the equipment?
A. I am aware of photographs taken, but that's when the attorneys changed from our behalf because I know that Richard, as well as Luke Davis, took pictures. Where those photographs are today, I am not sure.
Q. And you told Richard to take the photographs so you would have a record, didn't you?
A. Yes I did.

7

completed in the two days originally set for trial, the court set two additional days,

beginning the following Wednesday, September 18.

On Sunday, September 15, Mr. Trujillo contacted Ms. Meacham again about the

photographs. He explained in a subsequently filed declaration that

> we verbally retraced her steps on how she had gotten the case in the first
> place when a furious Mr. Brent Deroo, the manager of Johnson Brothers
> called her about the damaged equipment. Ms. Meach[a]m on this occasion
> then just happened to mention to me that she had previously represented
> Brent Deroo on an unrelated matter just before Johnson Brothers hired her
> for this matter, and that was how she actually got the referral on this case.

---

> Q. Because you thought those photographs would be important evidence, correct?
> A. Yes I did.

2 RP at 85. It cross-examined Mr. Holcomb as follows:

> Q. . . . So you called Mr. Deroo and Mr. Deroo instructed you to take photographs
> of the damage?
> A. Right.
> Q. And you did that?
> A. Yes.
> Q. And you don't have those photographs today, do you?
> A. I don't, no.
> Q. And prior to this lawsuit, you never gave those photographs into the possession
> of Mr. Blevins or Mr. Badissy?
> A. No, I never did.
> . . . .
> Q. . . . And the reason you took photographs is you wanted to document what the
> damage was?
> A. Yes.
> Q. You wanted to create some evidence of what the damage was?
> A. Right.

2 RP at 199-201.

. . . Ms. Meach[a]m also mentioned the difficulty of searching the Johnson Brother[s] file again at this point in time because it too was no longer in her office anymore now and was in an archived storage unit.

CP at 46.

The next day, however, Ms. Meacham contacted Mr. Trujillo and told him that she had gone to her storage unit after speaking with him, and while she again found no photographs in her Johnson Brothers file, she decided to search Mr. Deroo's file "on a desperation whim" and found the photographs there. *Id.* On Tuesday, September 17, she scanned and e-mailed the photographs to Mr. Trujillo and prepared and provided Mr. Trujillo with a declaration explaining her belated discovery of the photographs. Mr. Trujillo took the photographs to a copy service and dropped off a set of color photocopies to defense counsel at 10:00 a.m. on September 17. He reportedly attached a letter to the photographs expressing his view that the defense was "crumbling" and offered to settle. 3 RP at 243.

When trial continued on Wednesday, Mr. Trujillo recalled Mr. Holcomb to the stand and had the photographs marked for identification. Black Rock immediately objected to the admission of the photographs, alleging a violation of CR 26(g) by Mr. Trujillo and his client.

Black Rock's lawyer argued that the court should impose the most severe sanction for discovery abuse—exclusion of the evidence—and alternatively that the court should declare a mistrial and sanction Johnson Brothers by requiring it to pay Black Rock's fees

9

and costs incurred in the aborted trial. He argued, among other matters, that "everybody knows[,] I think[,] in this courtroom . . . [as] a lawyer what I've been doing. I've been establishing [a] spoliation of evidence defense because they took these photographs knowing they were important." 3 RP at 243. He later expanded on his trial theory:

> [T]he photographs could have been critically important because by the Plaintiff's witnesses' own admission, they removed the equipment from the site before my parties could even get there and look at it, before the sheriff's deputy could even get there and look at it. And then they moved to repair it before anybody from our side had a chance to inspect it. So the photographs were going to be the only smoking gun, if there were to be one. That's why their non-existence, non-disclosure was so critically important.

3 RP at 256. "'I thought [this] was a no-evidence case,'" Black Rock's lawyer argued, "'and now there is evidence.' . . . It's a complete wholesale change." 3 RP at 258.

Mr. Trujillo responded that no CR 26(g) violation could be found because he had inquired of both Ms. Meacham and the sheriff's department three times but was told no one could find the photographs. In response to the problem created for Black Rock's trial strategy, he responded,

> [Defense counsel] was just relishing all during the past week belittling my clients and our witnesses. "So you say you took pictures," this that. The truth was and to his dismay, that yes everyone has been testifying truthfully. This corroborates that.

3 RP at 260. Admitting that the defense had not been provided with important evidence, he stated, "[B]ut it wasn't because there was any CR 26(g) violation. I had every

incentive to produce those photos . . . . We just couldn't find it. . . . It's just one of those things in life that happens." 3 RP at 261.

After hearing argument, the trial court refused to exclude the evidence but declared a mistrial and imposed Black Rock's fees and costs incurred in the aborted trial as sanctions for a CR 26(g) violation. In announcing its decision, the court stated that it "want[ed] to make it clear[ that i]t was not an intentional commission of an act to withhold documents . . . . I do not find, nor is there any evidence[,] that these documents were known and hip-pocketed, but I do find that the omission constituted unreasonable conduct." 3 RP at 269.

Johnson Brothers moved for reconsideration, which was denied. It appeals.

## ANALYSIS

Johnson Brothers makes three assignments of error on appeal. It argues first, that the trial court erred in finding a violation of CR 26(g); second, that it erred by declaring a mistrial rather than ordering a continuance; and third, that it erred by imposing a sanction of $16,000 in fees and costs due to "the innocent actions of an independent third-party." Appellant's Opening Br. at 1. We first address the trial court's finding of a CR 26(g) violation and, finding no abuse of discretion, then turn to Johnson Brothers' challenge to the sanctions imposed.

11

### I. Finding of a violation of CR 26(g)

CR 26(g) requires that every response or objection to discovery by a party represented by an attorney be signed by at least one attorney of record for the party, and that the signature constitutes a certification "that the attorney . . . has read the request, response, or objection, and that to the best of [his] knowledge, information, and belief formed after a reasonable inquiry," it is—relevant here—"consistent with [the] rules [for superior court]." CR 26(g) further provides that "[i]f a certification is made in violation of the rule, the court . . . shall impose upon the person who made the certification, the party on whose behalf the . . . response . . . is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney fee."

Johnson Brothers concedes that under CR 34(a)(1), Black Rock had a right to obtain its production of photographs within the scope of CR 26(b) that were "in the responding party's possession, custody, or control." Generally speaking, CR 34 requires that a party "make a 'reasonable inquiry' to acquire the information or documentation sought by a discovery request." *Diaz v. Wash. State Migrant Council*, 165 Wn. App. 59, 76, 265 P.3d 956 (2011) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 343, 858 P.2d 1054 (1993)). Johnson Brothers argues, however, that Black Rock never demonstrated that Johnson Brothers had possession, custody, or control of the photographs taken by Mr. Holcomb at the time of Black Rock's November

2010 discovery request; rather, it argues, the photographs were in a file for Mr. Deroo, in the archives of a former attorney who was no longer employed by, working for, or under the control of Johnson Brothers. As a result, it argues, Mr. Trujillo could not have violated CR 26(g) when his inquiries to Ms. Meacham did not produce the photographs that she, or her employees, had misfiled.

A trial court exercises "broad discretion" in imposing discovery sanctions under CR 26(g), "and its determination will not be disturbed absent a clear abuse of discretion." *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). In *Fisons*, our Supreme Court recognized that the sanction rules are "'designed to confer wide latitude and discretion upon the trial judge to determine what sanctions are proper in a given case and to reduce the reluctance of courts to impose sanctions.'" 122 Wn.2d at 339 (internal quotation marks omitted) (quoting *Cooper v. Viking Ventures*, 53 Wn. App. 739, 742-43, 770 P.2d 659 (1989)).

This court recently addressed the meaning of "control" in *Diaz*, observing that "'[c]ontrol,' apart from possession, is defined as 'the legal right to obtain the documents requested upon demand.'" 165 Wn. App. at 78 (quoting *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)). We further noted that "[c]ontrol may also be found where an entity has access to and the ability to obtain the documents," and that "[t]he burden of demonstrating that the party from whom discovery is sought has the practical ability to obtain the documents at issue lies with the party seeking discovery." *Id.*

13

A client has the legal right to demand delivery of its property from its former lawyer. Under RPC 1.15A(c)(3), "[a] lawyer must identify, label and appropriately safeguard" client property. "The lawyer must keep records of such property that identify the property, the client or third person, the date of receipt and the location of safekeeping." RPC 1.15A(c)(3). Except as provided by the rule, "a lawyer must promptly . . . deliver to the client . . . the property which the client . . . is entitled to receive." RPC 1.15A(f). "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests," including "surrendering papers and property to which the client is entitled." RPC 1.16(d); *accord Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212 (D.D.C. 2006) ("Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control.").

Johnson Brothers argues that because Ms. Meacham misfiled the photographs in Mr. Deroo's file, she should be viewed as an "independent third-party." Appellant's Opening Br. at 1. But the fact that Ms. Meacham or someone on her staff placed the photographs in the wrong file does not change her duty to the former client to whom the property belonged—Johnson Brothers—and therefore does not change the analysis. And Mr. Trujillo's and Ms. Meacham's actions, as described by their declarations, show that

14

they shared a correct understanding that Mr. Trujillo had a right to ask that she deliver photographs entrusted to her by Johnson Brothers and that she had a duty to look for them. The record supported the trial court's implicit conclusion that the photographs were under Johnson Brothers' control.

The only issue, then, is whether the court abused its discretion when it found that Mr. Trujillo failed to make a reasonable inquiry and imposed sanctions. "Whether an attorney has made a reasonable inquiry is to be judged by an objective standard. Subjective belief or good faith alone no longer shields an attorney from sanctions under the rules." *Fisons*, 122 Wn.2d at 343 (footnote omitted). Inadvertence is not a defense; "the *Fisons* decision set the standards for discovery sanctions under CR 26(g) and made it clear that 'intent need not be shown before sanctions are mandated.'" *Mayer*, 156 Wn.2d at 689 (quoting *Fisons*, 122 Wn.2d at 345). "[E]ven an inadvertent error in failing to disclose [evidence] has been deemed willful as a 'willful violation means a violation without a reasonable excuse.'" *Carlson v. Lake Chelan Cmty. Hosp.*, 116 Wn. App. 718, 737, 75 P.3d 533 (2003) (internal quotation marks omitted) (quoting *In re Estate of Foster*, 55 Wn. App. 545, 548, 779 P.2d 272 (1989)). In determining whether an attorney has complied with CR 26(g), the trial court should consider "all of the surrounding circumstances, the importance of the evidence to its proponent, and the ability of the opposing party to formulate a response or to comply with the request." *Fisons*, 122

15

Wn.2d at 343; *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 431, 10 P.3d 417 (2000).

By Johnson Brothers' own admission, the photographs were important. In ruling on the CR 26(g) motion, the trial court characterized the photographs as "critically important" to the case. 3 RP at 256. "They are not collateral; they are central." 3 RP at 269. Noting that "[a] lot of times in these discovery disputes . . . [the] documents are often collateral and not central to the case," the court stated, "I can't say that here. . . . These are core and the testimony bore that out." 3 RP at 270. Where documents requested in discovery are this important, greater diligence is required to establish a reasonable search.

The trial court explained why it did not believe that Mr. Trujillo's two requests to Ms. Meacham between taking over representation in 2009 and the 2013 commencement of trial were a reasonable inquiry for critical evidence:

> Mr. Trujillo's failure to renew his request for Ms. Meacham to search her files for the photographs between November 2010 and September 15, 2013, was an unreasonable omission. . . . [W]hen Ms. Meacham finally did conduct a diligent search upon Mr. Trujillo's request she was able to find the photographs, and if she had been pressed to diligently search for the photographs during 2011, 2012 and/or the early months of 2013, it stands to reason that the photographs would have been disclosed to defense counsel well in advance of trial.

CP at 157.

16

To demonstrate an abuse of discretion, Johnson Brothers must show that "'no reasonable judge would have reached the same conclusion.'" *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (internal quotation marks omitted) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). It has not made that showing. A reasonable judge could conclude that a more diligent search was required by these circumstances.

## II. Appropriate sanction

Johnson Brothers next argues that the trial court abused its discretion in its selection of a remedy, contending that "[t]he drastic remedy of a mistrial is only to be used as a last resort . . . and only when nothing less than a new trial can remedy the situation." Appellant's Opening Br. at 40. It submits that the remedy of a mistrial "is all but unheard of in a civil bench trial." *Id.* It argues that monetary sanctions "served no purpose and were completely unwarranted because there was no violation in the first place." *Id.* at 48.

"If a violation of CR 26 is found, the imposition of sanctions is mandatory." *Carlson*, 116 Wn. App. at 737. "When imposing a sanction, the court must consider the least severe sanction that will accomplish the purpose to be served by the imposition of the sanction—but not be so minimal that it undermines the purpose of discovery." *Id.* "The purpose of the sanction is to deter, punish, compensate, educate, and ensure that the

17

wrongdoer does not profit from the discovery violation." *Id.* (citing *Fisons*, 122 Wn.2d at 355-56).

In imposing one of the greater sanctions, the record must clearly show "(1) one party willfully or deliberately violated the discovery rules and orders, (2) the opposing party was substantially prejudiced in its ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would have sufficed." *Barton v. Dep't of Transp.*, 178 Wn.2d 193, 215, 308 P.3d 597 (2013) (citing *Magana v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009)). Here again, "a 'willful violation means a violation without a reasonable excuse.'" *Carlson*, 116 Wn. App. at 737 (internal quotation marks omitted) (quoting *Foster*, 55 Wn. App. at 548). The trial court found substantial prejudice and explicitly considered the lesser sanction of a continuance.

Johnson Brothers discounts Black Rock's claim that it was prejudiced because it invested two trial days advancing a theory of defense that was undermined by the photographs, but the trial court agreed that Black Rock's defense was badly damaged. The court disclosed its perception of Black Rock's case in announcing its ruling on the CR 26(g) motion:

> The defendant prepared its defense upon two primary theories. One, that Mr. Ames was nowhere to be found and the defense was relying on his absence to proceed to trial on the assumption that the plaintiff would find it difficult to tie his clients to the use of the machinery in question. And two, that there was no photographic evidence of damages to the machinery and witnesses' testimony to date was inconsistent with the scope and extent of the money damages sought at trial. And that the machinery had been

removed from the site preventing the defendants at the time from taking their own photographs or recording the scope and extent of the damages that had alleged to have occurred.

As [defense counsel] points out, they were laying a foundation for spoliation arguments and in opening, [defense counsel] talked about the gaps in the evidence, specifically the pictures . . . .

. . . .

The Plaintiff's witnesses testified as anticipated by the defense regarding damages. What I mean by that is that their memory was that they were—the damages were limited in nature and that they had little memory of the specific damage or the types of damage that they sought.

3 RP at 266-67.

From the court's perspective, which is key, this presented "a situation that's prejudicial to the defendants":

[Defense counsel] has prepared for and premised his client's defense in large part on the representation that photographic evidence of damages did not exist, and argued and cross-examined witnesses on specifically their memory and the scope and extent of their memory of the fact of damage, what the damage may or may not have been and where it may or may not have been repaired.

3 RP at 270.

In reviewing its options, the trial court addressed Johnson Brothers' request for a less severe sanction: that the court order a continuance so that Black Rock could prepare to defend against the new evidence. Consistent with its earlier observations, it explained that granting a continuance

does not reverse the prejudice to the defendants. It would not accomplish the purpose of the rule. The Defendants have come to court premised on the defenses that I have mentioned. They were surprised by [defendant] Ames' appearance and testimony and they modified their defense to deal

19

with his presence, which was unexpected. Now they are asked to modify their defense with the existence of the pictures but they have laid a record through cross-examination and argument, which in my opinion can't be reversed.

3 RP at 271.[2]

We apply the abuse of discretion standard to sanctions imposed under CR 26(g) because it "recognizes that deference is owed to the judicial actor who is 'better positioned than another to decide the issue in question.'" *Fisons*, 122 Wn.2d at 339 (internal quotation mark omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)). Johnson Brothers fails to demonstrate that the trial court abused its discretion in finding a violation without a reasonable excuse and substantial prejudice, and in considering, but rejecting, a less severe sanction.

Johnson Brothers challenges the trial court's sanction of awarding trial fees and costs on the sole basis that there was no CR 26(g) violation and no sanction was

---

[2] In fairness to Johnson Brothers, the trial court also rejected Black Rock's preferred option that it exclude the photographs from evidence, explaining that

> [s]uppressing the photographs would potentially cure the prejudice that has befallen the defendants, but that outcome would be draconian for the plaintiff. If the photographs are excluded from evidence, that might preclude the plaintiff from seeking its full measure of damages if liability is established against one or more defendants.

CP at 159.

20

warranted, positions we have already rejected. Once the court declared a mistrial, an

award of Black Rock's fees and costs incurred in the aborted trial was a logical corollary.

In *Mayer*, 156 Wn.2d at 681, the plaintiffs sued the manufacturer of a synthetic home

insulator product, claiming that their home was damaged by its use. The jury returned a

verdict for the defense. *Id.* After the verdict, an attorney representing a plaintiff in a

separate case sent the plaintiffs a copy of a memorandum written by the defendant's

technical services manager in which he admitted that the product was "inherently

flawed." *Id.* Because the technical services manager had testified to the contrary at the

plaintiffs' trial, they moved for a new trial under CR 59 on the grounds of newly

discovered evidence. *Id.* at 682. The plaintiffs also sought discovery sanctions against

the manufacturer under CR 26(g). *Id.*

The trial court granted the new trial and imposed sanctions against the

manufacturer to compensate the plaintiffs for the first trial and first appeal. *Id.* Our

Supreme Court held that "[t]he trial court did not abuse its discretion in determining that

the [plaintiffs] should be fully compensated for the money wasted on the first trial and for

the loss of use of that sum for the period of time described in the judgment." *Id.* at 692.

The same reasoning supports the trial court's award of Black Rock's fees and costs

wasted on the aborted trial.

*Attorney fees on appeal*

Both parties request attorney fees on appeal. Johnson Brothers requests fees as costs under RCW 4.84.010 and RCW 4.84.080 if it is the prevailing party on appeal, but it is not. Alternatively, it requests attorney fees under CR 11, claiming that Black Rock violated the rule by "mis-citing authority and needlessly caused the mistrial and this appeal." Appellant's Opening Br. at 50. Assuming without deciding that CR 11 is a basis for attorney fees on appeal, we find no violation and deny the request.

Black Rock requests fees and costs on appeal as a matter of equity, as a discovery sanction, and under RCW 4.84.010 and RCW 4.84.080. Br. of Resp'ts at 50. "[F]ees will not be awarded in the absence of a contract, statute or recognized ground of equity." *ASARCO Inc. v. Air Quality Coal.*, 92 Wn.2d 685, 715, 601 P.2d 501 (1979).

Because Black Rock fails to provide any explanation or argument as to why it should be awarded fees as a matter of equity or as a discovery sanction, we decline its request for fees on those bases. *Id.* ("We are not informed why or under what applicable facts we should exercise these alleged powers to grant attorneys' fees. Lacking this essential information, we will not grant the request."). As the substantially prevailing party on appeal, Black Rock is entitled to costs under RAP 14.2, but not on the statutory bases that it cites.

Affirmed.

No. 32165-7-III
*Johnson Bros. v. Blevins*

A majority of the panel has determined this opinion will not be printed in the .Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Korsmo, J.